*In re* CARLOS NIEVES RIVERA, querellado.

*Número:* CP-89-282 *Resuelto:* 27 de noviembre de 1989

Norma Cotti Cruz, Subprocuradora General, e Ivonne Casanova Pelosi, Procuradora General Auxiliar, abogadas de El Pueblo; Víctor F. Villariny Marrero, abogado del querellado; Carlos Nieves Rivera, pro se.

PER CURIAM: El 8 de marzo de 1989 el Procurador General presentó un informe de conducta profesional extensa-

mente documentado, relacionado con el abogado-notario Carlos Nieves Rivera. El 31 de marzo de 1989, luego de considerar el informe, así como toda la documentación que lo acompañaba, ordenamos la presentación de querella con los cargos correspondientes.

El 3 de mayo de 1989 el Procurador General presentó la querella mediante la cual imputaba al licenciado Nieves Rivera, en el primer cargo, conducta impropia contraria a la Sec. 16 de la Ley Notarial de Puerto Rico vigente al momento de cometerse las violaciones, y a la Ley Núm. 99 de 27 de junio de 1956, en donde se reglamenta la obligación del notario en cuanto a su función de dar fe pública; en el segundo cargo, violación al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Los hechos en los cuales se fundamenta la querella, según expresados en la misma, son:

Caso I—El Lcdo. Carlos Nieves Rivera actuando como notario, autenticó las firmas del Sr. Reynaldo Burgos Vázquez, supuesto vendedor y el Sr. Andrés Torres Torres supuesto comprador a los efectos de traspasar la licencia número 4–1158582 del vehículo de motor marca Chevrolet propiedad del primero. Las partes nunca comparecieron ante este abogado a firmar el traspaso antes mencionado y las firmas que aparecen en la licencia no [son] la[s] de ellos.

Caso II—El Lcdo. Carlos Nieves Rivera actuando como notario, autenticó las firmas de Doña Edna Flores Hernández supuesta vendedora y el Sr. Arturo Crespo supuesto comprador a los efectos de traspasar la licencia número 1–224705 del vehículo de motor marca Mazda de 1984 propiedad de la señora Flores. Las partes nunca comparecieron ante este abogado a firmar el traspaso antes mencionado y las firmas que aparecen en el mismo no [son] la[s] de ellos. Además, el abogado Carlos Nieves Rivera notarizó una Declaración Jurada (A[fi]d[á]vit Número 31–379) supuestamente otorgada por el Sr. Arturo Crespo con el propósito de solicitar un duplicado de la tablilla para este mismo vehículo de motor. El otorgante nunca compareció ante dicho notario a firmar esta declaración

y la firma que aparece en la licencia no es la del Sr. Arturo Crespo.

Caso III—El abogado Carlos Nieves Rivera actuando como notario autenticó las firmas de Doña Antonia de Jesús Umpierre supuesta vendedora, [y de] Don Enrique Sánchez Resto supuesto comprador a los efectos de traspasar la licencia número 5–225994 del vehículo de motor marca Honda Accord del año 1984 propiedad de la señora Jesús. Los supuestos otorgantes nunca comparecieron ante este abogado a firmar el traspaso antes mencionado y las firmas que aparecen en la licencia no [son] la[s] de ellos.

Además el abogado Genaro Rodríguez Gerena notarizó una Declaración Jurada (A[fi]d[á]vit Número 32006) supuestamente otorgada por el Sr[.] Enrique Sánchez Resto con el propósito de solicitar un duplicado de la tablilla del vehículo antes mencionado. El señor S[á]nchez Resto nunca compareció ante dicho notario y la firma que aparece en esa Declaración Jurada no es la de él.

Caso IV—El Lcdo. Carlos Nieves Rivera actuando como notario autenticó las firmas de Sonia Mutt Ortiz supuesta vendedora y Juan Cotto Santana supuesto comprador a los efectos de traspasar la licencia número 4–1061867 del vehículo de motor Mazda del año 1985. Los supuestos otorgantes nunca comparecieron ante este abogado a efectuar el traspaso antes mencionado y las firmas que aparecen en la licencia no [son] la[s] de ellos.

Además, el abogado Carlos Nieves Rivera notarizó una declaración jurada (A[fi]d[á]vit Número 31796) supuestamente otorgada por Don Juan Soto Santana con el propósito de solicitar un duplicado de la licencia de conducir. El otorgante nunca compareció ante dicho notario a prestar esta declaración y la firma que aparece en la misma no es la de él.

Caso V—El abogado Carlos Nieves Rivera actuando como notario, autenticó las firmas de Miguel A. Rodríguez supuesto vendedor y William Rosario, supuesto comprador a los efectos de traspasar la licencia número 4–1148008 del vehículo de motor marca Datsun Sentra de 1985. Los supuestos otorgantes nunca comparecieron ante este abogado a efectuar el traspaso antes mencionado y las firmas que aparecen en la licencia no [son] la[s] de ellos.

Además, el abogado Carlos Nieves Rivera notarizó una Declaración Jurada (A[fi]d[á]vit Número 32071) supuestamente otorgada por el Sr. Miguel A. Rodríguez Maldonado con el propósito de solicitar un duplicado de la licencia del automóvil. El otorgante nunca compareció ante dicho notario a prestar esta declaración y la firma que aparece en la misma no es la de él.

Caso VI—El Lcdo. Carlos Nieves Rivera actuando como notario, autenticó las firmas de Norman E. Figueroa Morales supuesto vendedor y Arturo Crespo Romero, supuesto comprador a los efectos de traspasar la licencia número 4–114789, del vehículo de motor Suzuki del año 1985. El Sr. Norman Figueroa nunca compareció ante este abogado a efectuar este traspaso y la firma que aparece en la licencia no es la de él.

Caso VII—El Lcdo. Carlos Nieves Rivera actuando como notario, autenticó la firma del Sr. José Luis Soto Vilar mediante A[fi]d[á]vit 32110 en donde éste supuestamente comparecía como vendedor del vehículo de motor marca Honda Accord del año 1984. El otorgante nunca compareció ante este abogado y la firma que aparece en dicha declaración no es la de él.

Caso VIII—El Lcdo. Carlos Nieves Rivera actuando como notario autenticó las firmas de Doña Carmen M. Santos Pérez, supuesta vendedora y Don Juan L. González Irizarry supuesto comprador a los efectos de traspasar la licencia número 4–1147940 del vehículo de motor marca Mitsubishi de 1986. Los supuestos otorgantes nunca comparecieron ante este abogado a efectuar el traspaso antes mencionado y las firmas que aparecen en la licencia no [son] la[s] de ellos.

Además, el abogado Carlos Nieves Rivera notarizó una Declaración Jurada mediante A[fi]d[á]vit Número 32089 supuestamente otorgado por el Sr. Juan L. González con el propósito de solicitar un duplicado de la licencia del vehículo antes mencionado. El otorgante nunca compareció ante dicho notario a prestar declaración y la firma que aparece en la misma no es la de él.

Caso IX—El abogado Carlos Nieves Rivera actuando como notario autenticó la firma del Sr. Alfredo Díaz Ayala en una Declaración Jurada (A[fi]d[á]vit Número 31974) con el propósito de solicitar un duplicado de la tablilla del vehículo de mo-

tor marca Mazda de 1985. El Sr. Alfredo Díaz Ayala nunca compareció ante este notario a prestar la Declaración Jurada antes mencionada y la firma que aparece en la misma no es la de él. Querella de 5 de mayo de 1989, págs. 2–5.

El 31 de julio de 1989, el licenciado Nieves Rivera presentó su contestación a la querella, donde luego de hacer un breve recuento bibliográfico, admitió haber violado el Canon 35 del Código de Ética Profesional, *supra*, y la Ley Notarial de Puerto Rico. También reconoció que no podemos "limitar la sanción a una simple amonestación, pues entiende que '[l]a fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental'. *In re González González*, 119 D.P.R. 496 (1987)". Contestación a la Querella de 31 de julio de 1989, pág. 3. Finalmente solicitó que limitemos nuestra acción disciplinaria a una suspensión indefinida del ejercicio del notariado.

■ En cuanto al primer cargo, es claro que el querellado violó las disposiciones de la Ley Notarial de Puerto Rico cuando, actuando como notario, dio fe de conocer a los comparecientes y de que éstos firmaron ante él, y eran falsas ambas aseveraciones.

En cuanto al segundo cargo que guarda estrecha relación con el primero, un análisis de la querella, del informe del Procurador General y de los documentos que lo acompañan refleja que el querellado incurrió en un patrón de conducta antiética que denota un total menosprecio hacia la verdad.

■ En la querella se desglosan nueve (9) transacciones relacionadas con vehículos de motor donde las firmas de los comparecientes fueron falsificadas y donde el querellado dio fe de que estas personas comparecieron ante él y que él las conocía, siendo todo esto falso. Del informe del Procurador General y de los documentos que lo acompañan se desprende

que en varios de los casos incluidos en la querella la actuación antiética del licenciado Nieves Rivera hizo viable el traspaso de vehículos hurtados, facilitando así la comisión de un delito. El patrón de conducta que se esboza en la querella y que fuera admitido por el querellado sobrepasa los límites de violaciones en el ejercicio del notariado, lo que denota un completo menosprecio de los principios y postulados que deben regir la conducta de todo abogado. Canon 35 del Código de Ética Profesional, *supra*.

 El reiterado incumplimiento con las exigencias de la Ley Notarial de Puerto Rico por parte del querellado acusa una indiferencia que lo coloca al margen de las normas éticas que rigen la profesión legal. Los cánones de ética profesional "exigen al abogado ejercer su profesión con sinceridad y honradez, así como conducirse, no sólo en el desempeño de su profesión, sino en su vida privada de manera digna y honorable". *In re Santiago González*, 121 D.P.R. 580, 581 (1988). Debe tenerse siempre presente que "[l]a dignidad y la honorabilidad son valores deontológicos cuya omnipresencia se extiende al abogado como profesional en sus distintas funciones". *In re Calderón Marrero*, 122 D.P.R. 557, 566 (1988). Recientemente expresamos:

> Los abogados son profesionales. Por serlo, se requiere que desempeñen sus funciones con el mayor grado de competencia, responsabilidad e integridad. Ello no sólo debe pregonarse, sino hacerse de día a día con voluntad y verticalidad, utilizando al máximo el intelecto, la preparación y la dedicación de su ministerio. Lo anterior conlleva cultivar la sensibilidad, la franca y enriquecedora comunicación seria, digna y edificante, así como una sana convivencia. La profesión legal debe ser ejemplo para la sociedad de estas cualidades y valores humanos. Corresponde al abogado esa tarea de exaltar el honor y la dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales. (Escolio omitido.) *In re Sánchez Rodríguez*, 123 D.P.R. 876, 880–881 (1989).

■ Ante las circunstancias antes descritas no podemos acceder a la petición del licenciado Nieves Rivera de que limitemos la acción disciplinaria a una suspensión indefinida del ejercicio del notariado.(1) Éste incurrió en una seria violación a las normas y postulados que rigen la profesión de abogado.

Por todo lo antes expuesto, *se dictará sentencia mediante la cual se separe indefinidamente al abogado-notario Carlos Nieves Rivera del ejercicio de la abogacía y notaría.*

---

(1) En apoyo de esta posición, el licenciado Nieves Rivera nos relaciona circunstancias de estrechez económica, que ha gozado de excelente reputación personal y que en el ámbito profesional nunca ha recibido una amonestación o suspensión. Comprendemos su posición, pero esto no excusa su conducta ni demuestra que está capacitado para continuar ejerciendo la profesión de abogado-notario.