*In re* ALBERTO CRUZ CRUZ, querellado.

*Número:* CE-87-236 *Resuelto:* 31 de mayo de 1990

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, y Eliadís Orisini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Alberto Cruz Cruz, pro se, y Jesús L. Maldonado,* abogado del querellado; *José M. Aponte Jiménez, Comisionado Especial.*

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

[E]n *Sucn. Santos* v. *Registrador,* 108 D.P.R. 831, 837 (1979), indicamos que el "mecanismo para lograr correspondencia real y legítima entre persona y firma, es exigiendo la ley la comparecencia y conocimiento por el notario. *En otras palabras, la fe de conocimiento persigue evitar la suplantación de las partes en el otorgamiento".* . . .

*Significado del concepto*

Ante todo es esencial dejar sentado que la "afirmación de la identidad de los otorgantes es llamada en el lenguaje notarial *fe de [c]onocimiento".* H. García García, *Introducción a la técnica de la redacción de instrumentos públicos,* 1–2 Rev. Der. Notarial 257, 273 (Julio–Diciembre 1953). Pero el concepto trasciende su literalidad. En el ámbito notarial, "[l]a idea de compareciente va *inexorablemente unida al hecho material de la presencia física ante notario".* R. Núñez Lago, *Los esquemas conceptuales del instrumento público,* 1–2 Rev. Der. Notarial 49, 78 (Julio–Diciembre 1953). *Esa comparecencia, como hecho físico y coetáneo* al otorgamiento, implica su narración en la forma documental (instrumento) mediante la dación de fe de conocimiento de identidad. (Énfasis suplido en el original.) *In re Olmo Olmo,* 113 D.P.R. 441, 451–452 (1982).

I

El Procurador General formuló querella contra el Lcdo. Alberto Cruz Cruz en la cual le imputó haber violado "los Cánones de [É]tica Profesional y la Fe Pública Notarial al *autorizar traspasos de vehículos de motor, sin que la persona vendedora ni el comprador comparecieran personalmente ante él a suscribir en su presencia el citado documento de traspaso".* (Énfasis suplido.) Querella de 8 de abril de 1987, pág. 1.

Una vez notificado, Cruz Cruz inicialmente negó el cargo. Designamos Comisionado Especial al ex Juez Superior Lcdo. José

M. Aponte Jiménez para que recibiera la prueba y rindiera oportunamente un informe. Previo los trámites de rigor, con apoyo en la prueba testifical y documental, el Comisionado Especial formuló en su informe las determinaciones de hecho siguientes:

1.- El querellado, Lic. Alberto Cruz Cruz, abogado en la práctica privada de la profesión, fue admitido al ejercicio del notariado en 29 de mayo de 1975.

2.- *No hay controversia, por haberlo aceptado el querellado*, Lic. Alberto Cruz Cruz, en cuanto a que éste, actuando en su capacidad de notario, autenticó la firma y juramento del vendedor, Miguel A. Cruz Quiland y el comprador, Ray Rodríguez Román, al éstos formalizar el traspaso de un vehículo de motor marca Toyota al *dorso de la licencia del referido vehículo* según lo requiere la Ley de Vehículos y Tránsito de Puerto Rico en su sección 2-501 (9 L.P.R.A. 511), sin haber tenido ante sí a dichas personas.

3.- *Tampoco hay controversia*, por las mismas consideraciones antes expresadas, en cuanto a que el querellado, Lic. Alberto Cruz Cruz, para *autenticar las referidas firmas y juramento*, autorizó el [afidávit] número 4264 de fecha 19 de enero de 1985 haciendo constar que los otorgantes del traspaso en cuestión suscribían y juraban el *mismo ante su presencia sin haber ocurrido ello así.*

Durante la vista celebrada desfiló prueba, presentada por el Procurador General, sobre el sistema supletorio utilizado por los traficantes de vehículos de motor (dealers) para inscribir el traspaso en el Departamento de Transportación y Obras Públicas del Estado Libre Asociado de Puerto Rico de los vehículos usados tomados (trade-in) a cambio de sus unidades. Dicha práctica consiste en utilizar unos impresos donde el traficante certifica bajo juramento ante notario primeramente, la adquisición del vehículo y luego la venta del mismo a otra persona, en lugar de formalizar y autenticar la transacción del traspaso al dorso de la licencia del vehículo, ante notario u oficial competente. Procesados dichos formularios en el Departamento de Transportación y Obras Públicas, se expide la licencia del vehículo a favor del comprador del vehículo usado.

Por entender, salvo mejor criterio, que estos extremos no son relevantes al cargo imputado en la presente querella, consideramos innecesario abundar sobre lo antes reseñado.

Por último, es de rigor apuntar que encontramos apoyo en el récord a través del testimonio de don [Á]ngel Egozcue Martínez,

Director Ejecutivo de la Asociación de Distribuidores de Automóviles de Puerto Rico, para producirnos la fuerte impresión de que, por razones de conveniencia en el tráfico normal de compra y venta de automóviles usados es práctica, generalizada por los traficantes de vehículos de motor en Puerto Rico al formalizar cambios en la titularidad de los automóviles, acudir ante un notario de su confianza para autenticar la firma y juramento formalizado al dorso de la licencia del automóvil. *Al autenticarse la firma y juramento del vendedor y comprador de la unidad usada, éstos no acuden ante la presencia del notario.* Mediante dicho procedimiento, tanto la firma del vendedor como la del comprador al dorso de la licencia se verifica ante la presencia única del traficante (dealer) o su representante autorizado. En el caso de autos, la actuación del notario Alberto Cruz Cruz, *obedeció a esa práctica.* (Énfasis suplido.) Informe del Comisionado Especial con determinaciones de hecho, pág. 3.

## II

■ Innumerables pronunciamientos nuestros recogen la visión del notario como un funcionario público y profesional del Derecho. En virtud de estas dos (2) facetas es que en la esfera de los hechos *da fe de lo que ve, oye y percibe por sus sentidos*, y como jurista, autentica y formula un *juicio de certeza* que nutre de fuerza probatoria las declaraciones de voluntad de las partes en instrumentos y documentos públicos redactados conforme las leyes. *In re Feliciano*, 115 D.P.R. 172 (1984); *In re Maldonado Rivera*, 103 D.P.R. 523 (1975); P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 22. Esta visión sirvió de marco conceptual y quedó claramente cristalizada en el Art. 2 de la nueva Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2002).

■ Dicha ley notarial también reafirmó los principios atinentes a la facultad tradicional de los notarios para autenticar firmas (afidávit). *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110, 118–121 (1986). En el descargo de esa importante gestión, les impuso el deber de dar fe del conocimiento personal

de los firmantes o del testigo de conocimiento, o hacer constar que ha identificado a los otorgantes mediante los medios supletorios que dispone la propia ley. 4 L.P.R.A. sec. 2092.

■ Es evidente, pues, que la Ley Notarial derogada así como la actual considera un asunto medular la comparecencia personal y el conocimiento de los firmantes. Su inobservancia siempre ha constituido una falta seria sujeta a medidas disciplinarias. *In re Echevarría González*, 116 D.P.R. 423, 424 (1985); *In re Félix*, 104 D.P.R. 379 (1975). Así, en el pasado hemos sancionado rigurosamente violaciones de ese tipo en las declaraciones juradas de traspaso de vehículos de motor. *In re Nieves Rivera*, 124 D.P.R. 803 (1989); *In re González González*, 119 D.P.R. 496 (1987). Aparentemente nuestros pronunciamientos no han tenido el efecto aleccionador y disuasivo deseado.

■ Reiteramos pues, una vez más, la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosamente el mandato de ley sobre comparecencia y conocimiento de los otorgantes. Como expone José M. Sanahuja y Soler en su *Tratado de Derecho Notarial*, Barcelona, Ed. Bosch, 1945, T. 1, pág. 457, "en principio es *necesario* que el notario garantice la identidad de las personas que intervienen en un negocio jurídico, porque la ilación entre unas situaciones y otras exige, para dar certidumbre a las relaciones jurídicas, *que se fundamente bajo la fe notarial el punto de unión o de conexión, que es precisamente la persona que ostentando un derecho lo transmite a favor de otra*". (Énfasis suplido.)

### III

Durante el trámite de esta querella desfiló abundante prueba sobre la práctica prevaleciente en el negocio de compra y venta de vehículos de motor. Es común que al adquirir un vehículo de motor usado, los traficantes (*dealers*) o distribuidores le requieran a sus dueños que firmen la licencia, esto es, el certificado expedido por el Departamento de Transportación y Obras Públicas. *Ese*

*acto y firma no se efectúa ante un notario.* Así firmada, cuando el traficante o distribuidor vende la unidad, acude ante un notario y suscribe un documento denominado *Juramento del traficante comprador del vehículo de motor.* En él se consignan las características físicas del vehículo: clase, marca, modelo, número de motor, color, número de chasis, número y diámetro de cilindros, y capacidad en caballos de fuerza. En lo pertinente, dicho documento expone la afirmación siguiente: "*Acompañamos (acompaño) la licencia de este vehículo de motor debidamente firmada y endosada a dicho comprador por el suscribiente.* Solicitamos (solicito) del Hon. Secretario de Obras Públicas de Puerto Rico se sirva efectuar el traspaso del vehículo a nombre de dicho comprador expidiendo una nueva licencia a su nombre. Juramos (juro) que el *traspaso de este vehículo se hace con el consentimiento expreso y voluntario del mencionado comprador y hacemos (hago) constar que la venta se ha efectuado.*" (Énfasis suplido.) *Exhibit* 6-A.

La evidencia revela, además, que desde hace varios años el Departamento de Transportación y Obras Públicas ha aceptado este trámite en los traspasos oficiales. Esta práctica se desarrolló para atender las necesidades y agilizar las transacciones en este tipo de negocio. No existía legislación que proveyera otros mecanismos u otra manera que pudiera utilizarse sin que se trastocaran seriamente las compraventas vehiculares. (1)

■ No obstante, con *posterioridad*, la Asamblea Legislativa —advertida de esta práctica y situación— enmendó la Sec. 2-501 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 511, que regula el procedimiento para formalizar traspasos. A tal efecto, la Ley Núm. 105 de 15 de julio de 1988, en lo pertinente, dispuso:

---

(1) A autos se unió una consulta legal —de 12 de julio de 1978— evaluada por el asesor legal del Departamento de Transportación y Obras Públicas y dirigida al Director de Área de Vehículos de Motor. La misma concluyó *sólo* que el procedimiento de traspaso fundado únicamente en la declaración del adquirente (traficante) era autorizado *por excepción ante situaciones extremas.* La consulta se apuntaló en la Opinión del Secretario de Justicia Núm. 1966-13 de 11 de febrero de 1966.

(c) El traspaso y aceptación deberá hacerse bajo juramento o afirmación ante *notario*, colector de rentas internas o empleado en que por escrito expresamente éste delegue, o funcionario expresamente autorizado por el Secretario para ese fin.

En los casos en que un traficante o vendedor de vehículo de motor tome unidades usadas como parte del pronto pago del precio de otros vehículos de motor, el traspaso podrá efectuarse mediante declaración jurada suscrita por el traficante o vendedor, siempre y cuando el dueño del vehículo haya expresado previamente su voluntad de cederlo o traspasarlo a éste estampando su firma al dorso de la licencia y del certificado de título del vehículo *ante un funcionario autorizado para tomar juramentos*.

En tales casos la declaración jurada del traficante o vendedor deberá especificar la fecha en que le fue cedida o entregada la unidad de que se trate, el nombre y dirección del dueño del mismo que lo cedió como pronto pago, al igual que el medio usado para la adecuada identificación de dicha persona. También deberá incluir una descripción detallada del vehículo con especificación de marca, año, color, modelo o tipo, número de tablilla, número de registro de motor, tipo de motor, caballos de fuerza de uso efectivo, número de marbete, número de puertas y cualesquiera otros números o marcas de identificación de la unidad o de sus piezas.

Si por alguna razón de ley, se solicitare el traspaso, pero fuere imposible seguir los procedimientos antes señalados, el Secretario procederá con el mismo, siempre y cuando que quede autorizado en documento fehaciente. (Énfasis suplido.)

■ Además de este texto legal, el Informe de la Comisión de Transportación y Obras Públicas, P. del S. 1340 de 19 de mayo de 1989, y la Exposición de Motivos de la ley reflejan indubitadamente que este trámite especial, que facultó a los traficantes o vendedores a realizar el traspaso, *no alteró tres (3) requisitos preexistentes*, a saber: (1) la autorización mediante la firma o marca del dueño del vehículo; (2) su formalización al dorso de la licencia, y (3) efectuarla *bajo juramento o afirmación ante notario*, colector de rentas internas u otro delegado o funcionario autorizado por el Secretario de Transportación y Obras Públicas.

■ Resulta claro que, aun después de las recientes enmiendas, el trámite especial para el traspaso de unidades usadas tomadas como pronto pago (*trade in*) por un traficante o vendedor

*sólo es permisible y válido* "siempre y cuando el dueño del vehículo haya expresado previamente su voluntad de cederle o traspasarlo a éste [traficante o vendedor] estampando su firma al dorso de la licencia y certificado de título del vehículo *ante un funcionario autorizado para tomar juramento*". (Énfasis suplido.) 9 L.P.R.A. sec. 511(c).

 *En conclusión, bajo la Ley de Vehículos y Tránsito —antes y después de su enmienda— es y ha sido requerido que el traspaso del vehículo se haga por el dueño ante un notario u otro funcionario autorizado.*

## IV

 Aclarados el significado y el alcance de las disposiciones estatutarias, es evidente que el querellado Cruz Cruz infringió la ley notarial cuando el 19 de enero de 1985 autorizó el Afidávit Núm. 4264 sin que comparecieran y firmaran ante él el vendedor Miguel A. Cruz Quiland y el comprador Ray Rodríguez Román. No excusa su proceder la práctica prevaleciente. Sin embargo, abona a su haber su historial limpio como abogado y notario, que la actuación no tuvo el propósito de perpetrar un fraude y la inexistencia de evidencia de que se perjudicaran terceros.

 En estas circunstancias, circunscribimos la sanción disciplinaria a una suspensión de seis (6) meses del ejercicio de la notaría. Sirva la presente como una admonición general a los notarios sobre la importancia de observar las disposiciones de la ley notarial, incluso en gestiones tan sencillas como la de traspasos de automóviles.

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Hernández Denton no intervino.