*In re* GENARO RODRÍGUEZ GERENA, querellado.

*Número:* CP-89-283          *Resuelto:* 11 de febrero de 1993

*Norma Cotti Cruz, Subprocuradora General, Yvonne Casanova Pelosi, Procuradora General Auxiliar,* y *José M. Aponte Jiménez, Comisionado Especial,* abogados de El Pueblo; *Augusto C. Sánchez Fuentes* y *Juan J. Vera González,* abogados del querellado.

PER CURIAM:

## I

La Procuraduría General presentó una querella contra el abogado-notario Genaro Rodríguez Gerena el 3 de mayo de 1989. Le imputó haber violado, como notario, su obligación de dar fe pública. Arts. 15(e) y 26 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. secs. 2033(e) y 2044. También le imputó una infracción al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, por conducta reñida con la sinceridad y honradez que debe caracterizar la conducta de todo abogado "al redactar afidávit u otros documentos ...".

## II

Oportunamente, el querellado Rodríguez Gerena contestó y negó los hechos. Designamos Comisionado Especial

al ex Juez Superior José M. Aponte Jiménez con la función de escuchar, recibir, dirimir la prueba y rendirnos un informe. El 9 de mayo de 1992, a base de la prueba presentada, el Comisionado Especial rindió su informe y formuló las determinaciones de hecho siguientes:

1. El querellado, Lic. Genaro Rodríguez Gerena, fue admitido al ejercicio de la abogacía el 29 de diciembre de 1976. Se le autorizó a ejercer como notario el 20 de enero de 1987. Actualmente tiene sesenta y cinco (65) años de edad.

2. Al 10 de diciembre de 1991 había autorizado doce mil seiscientos trece (12, 613) testimonios. En su gran mayoría traspasos de vehículos de motor juramentados a solicitud de traficantes ("dealers").

3. Su oficina estaba ubicada en Luquillo, con una "mini oficina" en Carolina.

4. Alguien de nombre Narciso Viader, con quien compartía la "mini oficina" de Carolina, recogía de los "dealers" las licencias de los vehículos de motor que iban a ser traspasados. Las refería al querellado para el juramento de los otorgantes y autorización del testimonio requerido para el traspaso.

5. No surge de la prueba presentada por el Procurador General que anteriormente se hubiese presentado querella alguna contra el querellado.

6. El Departamento de Transportación y Obras Públicas expidió a nombre de Lillian Falcón Rodríguez la licencia correspondiente al vehículo de motor Mazda del año 1986, número de motor JM1BF22XGO139385.

7. Dicho vehículo le fue hurtado. Lo entregó a la compañía que lo financió luego de recuperarlo desmantelado.

8. Ese mismo vehículo fue adquirido posteriormente en una subasta por Angel Figueroa Alvarado, hijo de Rosa M. Alvarado Rivera.

9. Rosa M. Alvarado Rivera entregó a su hijo, Angel Figueroa Alvarado, una copia de su licencia de manejar vehículos de motor para que le hiciese las gestiones de obtener a su nombre la licencia de dicho vehículo.

10. La copia de la licencia de conducir vehículos de motor que Rosa M. Alvarado Rivera le entregó a su hijo, Angel Figueroa Alvarado con los propósitos antes señalados, le fue entregada por éste a un tal "Luis" para que le hiciese las gestiones de obtener la licencia del vehículo a nombre de su madre, Rosa M. Alvarado Rivera. Le pagó doscientos cincuenta dólares (250.00) por ello.

11. El 21 de enero de 1987, el querellado, Lic. Genaro Rodríguez Gerena, autorizó como notario el traspaso del referido vehículo de motor, al dorso de la licencia del vehículo, bajo su número de testimonio 3946 de igual fecha, a favor de Rosa M. Alvarado Rivera como compradora.

12. Acreditó con ello que Lillian Falcón Rodríguez, como vendedora y Rosa M. Alvarado Rivera, como comprdora, suscribieron el traspaso del vehículo en su presencia.

13. Lillian Falcón Rodríguez, como vendedora, y Rosa M. Alvarado Rivera, como compradora no comparecieron ante el querellado a suscribir el traspaso del vehículo tal y como éste lo acreditó al certificar el acto como notario. Ninguna lo conoce.

14. Las firmas de Lillian Falcón Rodríguez y de Rosa M. Alvarado Rivera que aparecen al dorso de la licencia del antes mencionado vehículo, no son las de éstas.

15. Rosa M. Alvarado Rivera no compareció ante el querellado, Lic. Genaro Rodríguez Gerena, a suscribir la declaración autenticada por dicho notario bajo su número de testimonio 3979 de fecha 23 de enero de 1987 mediante la cual hace constar que se le extravió la tablilla de un vehículo Mazda del 1986. Su firma tampoco es la que aparece en dicha declaración.

16. Carlos F. Luna Ortiz, figuraba como dueño, en la licencia de vehículo de motor expedida por el Departamento de Transportación y Obras Públicas, del vehículo marca Nissan del año 1985, serie JN1PB12S4FU648247.

17. Dicho vehículo lo había vendido Luna Torres a un tal "Güisin". Nunca formalizaron el traspaso correspondiente. El vehículo fue hurtado estando en posesión del tal "Güisin". Fue recuperado desmantelado por lo que Luna Ort[i]z lo entregó a la entidad que lo financió para no deteriorar su crédito.

18. El querellado notarizó el traspaso del vehículo de Carlos Luna Ort[i]z a favor de Ramiro Matías Martínez al dorso de la licencia del vehículo, mediante su testimonio número 3947 de fecha 21 de enero de 1987.

19. Con ello acreditó que Carlos Luna Ort[i]z compareció ante él y suscribió el referido traspaso como vendedor del vehículo.

20. Carlos Luna Ort[i]z no compareció ante el notario querellado a suscribir el referido traspaso del vehículo que figuraba a su nombre. La firma que aparece autenticada por el notario querellado bajo su número de testimonio 3947, de fecha 21 de enero de 1987, al dorso de la licencia del vehículo de motor

marca Nissan del año 1985, no es la suya. No conoce al notario querellado.[1] Informe, págs. 5–7.

## III

"'[L]a fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo esquema de autenticidad documental' ". *In re Nieves Rivera*, 124 D.P.R. 803, 808 (1989). Ya en *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 837 (1979), seguido en *In re Cruz Cruz*, 126 D.P.R. 448, 451 (1990), habíamos dicho que "el 'mecanismo para lograr correspondencia real y legítima entre persona y firma, es exigiendo la ley la comparecencia y conocimiento por el notario. *En otras palabras, la fe de conocimiento persigue evitar la suplantación de las partes en el otorgamiento ...*' ". (Énfasis en el original.)

"Sin la fe del conocimiento, sobran los notarios. Por ende, su inobservancia es una falta grave sujeta a estrictas medidas disciplinarias. *In re Echevarría González*, 116 D.P.R. 423, 424 (1985); *In re Félix*, 104 D.P.R. 379 (1975). Las violaciones en declaraciones juradas de vehículos de motor no son la excepción. *In re Nieves Rivera*, [supra]; *In re González González*, 119 D.P.R. 496 (1987)." (Énfasis suprimido.) *In re Feliciano Crespo*, 132 D.P.R. 69, 71 (1992).

Reiteramos una vez más, la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosamente el mandato sobre comparecencia y conocimiento de los otorgantes, usando incluso las medidas

---

[1] El Procurador General desistió del cargo de que Ramiro Matías Martínez no compareció ni suscribió como comprador el traspaso del vehículo propiedad de Carlos Luna Ortiz ante Rodríguez Gerena.

Igualmente desistió la alegación de que el señor Matías Martínez no compreció ni suscribió la declaración autenticada por el notario en su testimonio Núm. 3978, fechado 6 de mayo de 1987.

supletorias de identificación visualizadas en la Ley Notarial. *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76 (1992). Nuestros pronunciamientos van acorde con el Canon 35, *supra*, en lo relativo a la sinceridad y honradez personal y profesional que debe caracterizar la fe notarial en todo negocio jurídico; intereses de profundo contenido social lo exigen.

Las circunstancias particulares ante nos denotan un patrón en que las firmas falsificadas y la conducta del notario Rodríguez Gerena hizo viable el traspaso "legal" de vehículos hurtados. Procede decretar su separación indefinida del ejercicio de la abogacía y la notaría. *In re Nieves Rivera*, supra.

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García limitaría la sanción al ejercicio de la notaría y la Juez Asociada Señora Naveira de Rodón lo separaría permanentemente de la notaría.