*In re* CELESTINO VARGAS HERNÁNDEZ, querellado.

*Número:* CP-90-696          *Resuelto:* 30 de marzo de 1994

*Jorge E. Pérez Díaz, Procurador General, Norma Cotti Cruz, Miguel A. Santana Bagur, Anabelle Rodríguez, Subprocu-*

*radores Generales, Irma Casanova Pelosi e Iván F. Fuster,
Procuradores Generales Auxiliares*, abogados de El Pueblo;
*Víctor J. Estrella Hernández*, abogado del querellado.

PER CURIAM: El 6 de febrero de 1990, el Procurador General presentó ante este Tribunal un Informe Sobre Conducta Profesional contra el Lcdo. Celestino Vargas Hernández.[1] Mediante Resolución del 7 de septiembre de 1990, este Tribunal dispuso que "[v]isto el escrito para mostrar causa presentado por el notario Celestino Vargas Hernández, el Tribunal ordena al Procurador General que proceda a formular querella disciplinaria en su contra". En cumplimiento de dicha Resolución, la Oficina del Procurador General le imputó al Lcdo. Celestino Vargas Hernández, mediante Querella[2] a esos efectos radicada el 20 de septiembre de 1990, págs. 1–2, dos cargos, a saber: (1) "El Lic. Celestino Vargas Hernández incurrió en conducta impropia contraria a las disposiciones de la Ley Notarial vigente, Ley de junio 27 de 1956, Núm. 99, Sección 16, en donde se dispone sobre la Fe Pública Notarial",[3] y (2) "El

---

[1] El 31 de agosto de 1950, el Lcdo. Celestino Vargas Hernández fue admitido por este Foro al ejercicio de abogacía en Puerto Rico, en la actualidad su nombre se encuentra en el Registro de Abogados. Por su parte, el 15 de septiembre de 1950, le fue expedida la autorización para ejercer la notaría.

[2] Se estipuló por las partes que la presente Querella surgió como objeto de una investigación criminal sobre hurto de autos a solicitud de la Fiscalía de Aguadilla, remitida a la oficina del Procurador General —a través de la División Criminal del Departamento de Justicia— y que no existe salvo lo anterior, Querellante particular alguno. Véase Estipulación Núm. cuatro (4) del Informe de Conferencia entre Abogados radicado el 20 de marzo de 1991 ante el Comisionado Especial.

[3] La referida Sec. 16 de la Ley Notarial de 1957 (4 L.P.R.A. sec. 1016 (ed. 1965)) —vigente al momento de los hechos— reza como a continuación:

"*Sec. 1016.   Identidad de las partes*

"Los notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos. También darán fe acerca de la edad, estado, profesión y vecindad de los otorgantes, con relación al dicho de los mismos, y en caso de que fuera casada la persona que aparezca como adquirente del derecho que es objeto del contrato, se expresará el nombre y apellido del cónyuge que no comparezca al otorgamiento. En casos graves y extraordinarios en que no sea posible consignar por completo estas circunstancias, expresarán cuanto sobre ello les conste de propia ciencia y manifiesten los testigos. El testigo o testigos de conocimiento, deberán ser, en todo caso, personas bien conocidas del notario, y éste deberá dar fe de ello en el documento. En tales casos graves y extraordinarios en que a un notario le sea imposible dar fe del conocimiento de los otorgantes, ni puedan éstos presentar un testigo o testigos de conocimiento, lo expresará así,

Lcdo. Celestino Vargas Hernández violó las disposiciones del Canon 35 de Ética Profesional específicamente en lo que respecta al tercer párrafo de dicho Canon relativo a la sinceridad y honradez del abogado en sus funciones."[4]

Los hechos que configuran las imputaciones antes indicadas, según constan en la referida Querella, págs. 2–3, son los siguientes:

### CASO I

El Lic. Celestino Vargas Hernández, actuando como notario, autenticó la firma del Sr. Rafael Otero Muñiz, mediante Affidávit Núm. 107343 a los efectos de traspasar el vehículo de motor marca Jeep Suzuki del año 1982, número de licencia 2-050834. Aunque la firma es la del otorgante, éste nunca compareció ante dicho notario para otorgar la misma.

### CASO II

El Lic. Celestino Vargas Hernández, actuando como notario, autenticó la firma de la Sra. Inés María Arocho Torres, mediante Affidávit Núm. 107344 a los efectos de traspasar el vehículo de motor Toyota Corona del año 1982, número de licencia 2-0967466, aunque la firma es de la otorgante, ésta nunca compareció ante dicho notario para otorgar la misma.

### CASO III

El Lic. Celestino Vargas Hernández, actuando como notario, autenticó la firma del Sr. Luis González Hernández y el Sr. Rufino Álvarez, mediante Affidavit Núm. 108014 a los efectos de traspasar el vehículo de motor marca Datsun del año 1980, licencia número 2-0620968. Los otorgantes nunca comparecieron ante dicho notario para otorgar estas firmas y en el caso del Sr. Rufino Alvarez, la firma no es la de él.

---

designando los documentos que le presentaren como prueba de su nombre, estado y vecindad, y refiriendo además el motivo del caso grave o extraordinario."

[4] El referido Canon 35 del Código Ética Profesional en lo pertinente reza en su tercer párrafo:

"El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable." 4 L.P.R.A. Ap. IX.

## CASO IV

El Lic. Celestino Vargas Hernández, actuando como notario, autenticó la firma de la Sra. Elisa Santiago a los efectos de traspasar el vehículo de motor marca Champ año 1981, licencia número 2-0907755 mediante Affidávit Núm. 107,008. Aunque la firma es la de la otorgante ésta nunca compareció ante dicho notario para otorgar la misma.

El notario querellado —mediante Contestación a Querella radicada ante este Tribunal el 4 de diciembre de 1990— *negó la comisión de los hechos alegados en su contra.* Adujo que lleva cerca de cuarenta (40) años desempeñándose como abogado y notario público y que durante "todo ese tiempo nunca ha sido objeto de querella alguna con excepción a la presente y su función profesional *nunca ha causado daño a persona alguna."* (Énfasis suplido.) Contestación a querella, pág. 1. *En adición, expuso que, en sus actuaciones como notario, nunca ha realizado gestión fraudulenta alguna y que nadie resultó perjudicado en los traspasos de vehículos a que se refieren los cargos de la Querella en cuestión.* El 21 de diciembre de 1990, este Tribunal designó a José M. Aponte Jiménez como Comisionado Especial.

Posteriormente, el querellado estipuló —en conjunción con el Procurador General— la admisión en evidencia de varias declaraciones juradas prestadas en la Fiscalía de Aguadilla por los siguientes testigos: Luis González Hernández, Inés María Arocho Torres, Ramón Rivera Rosa, Rafael Ángel Otero Muñiz[5] y Elisa Santiago Lamboy.[6] El 12 de diciembre de 1991 se señaló vista —por el Comisionado Especial José M. Aponte Jiménez— para escuchar el testimonio no estipulado del Fiscal Auxiliar de Aguadilla,

---

[5] Las referidas declaraciones juradas se prestaron ante el Hon. Luis A. Román, Fiscal de Distrito, el día 4 de mayo de 1984.

[6] La referida declaración jurada se prestó ante el Hon. Luis A. Román, Fiscal de Distrito, el día 23 de julio de 1984.

Bernardo Muñiz Arocho, y el de Rufino Álvarez Hernández.

Durante la vista, por estipulación, se admitieron en evidencia, ofrecidas por el Procurador General, las declaraciones juradas antes mencionadas que confirman los cargos imputados contra el querellado. A su vez, se admitieron, por estipulación, las cuatro (4) licencias con sus traspasos relacionadas con las violaciones a la Ley Notarial de Puerto Rico imputadas al querellado. Luego de la referida vista, el Comisionado Especial concluyó en su Informe, radicado ante este Foro el 2 de enero de 1992, pág. 3, que "[l]as personas cuyo juramento y firmas certificó el notario querellado en los referidos cuatro [(4)] affidavits, *contrario a lo que acreditó al autorizarlos, no comparecieron a suscribir los traspasos en presencia suya. Ninguno lo conocía.* En el caso del señor Rufino Álvarez Lamboy, correspondiente al affidavit 108,014, aunque la firma que aparece en el traspaso del vehículo no es la suya, autorizó verbalmente al comprador, Luis González Hernández a firmarlo por él como vendedor". (Énfasis en el original suprimido y énfasis suplido.)

Estando en condiciones de resolver el asunto ante nuestra consideración, procedemos a así hacerlo.

## II

Faltar a la veracidad de los hechos "es ciertamente, una de las faltas más graves que puede cometer el notario. Este es custodio de la fe pública, base esencial de todo el sistema del notariado. La certificación de un hecho falso, constituye un acto destructor de esa fe pública". P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 61.[7]

En *In re González González*, 119 D.P.R. 496,

---

[7] Véanse, en adición: *In re Landing; y Aulet*, 107 D.P.R. 103 (1978); *In re Cruz Tollinche*, 105 D.P.R. 500 (1976); *In re Sánchez Ruiz*, 105 D.P.R. 848 (1977).

499 (1987), apuntalamos la importancia que tiene la fe pública notarial en nuestro sistema de justicia; expresamos, entonces, que:

La fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental. Cuando se quiebra, todo el sistema se afecta. *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986). La responsabilidad del notario es personal, indivisible e indelegable. *In re Laboy*, 113 D.P.R. 476, 481 (1982); *In re Meléndez Pérez*, 104 D.P.R. 770 (1976).(8)

■ "Repetidamente hemos advertido a los notarios de su obligación de cumplir estrictamente con lo preceptuado en la Ley Notarial. Deben ser exigentes y abstenerse de dar fe notarial de declaración jurada si la persona que va a otorgar el documento o la declaración jurada no ha comparecido personalmente." *In re Sánchez Ruiz*, 105 D.P.R. 848, 849 (1977). En *In re González González*, ante, pág. 499, luego de citar y reafirmar las expresiones antes aludidas, expresamos que:

En los últimos años han aumentado notablemente los miembros de la profesión de abogado. Igual ha sucedido con el ejercicio de la notaría. Sin que profundicemos en las razones, ello ha conllevado un incremento natural en los casos disciplinarios, incluso los de infracción a la Ley Notarial.

Reafirmamos nuestro compromiso de velar por y lograr la máxima excelencia en la profesión y función notarial. *In re Tirado Saltares*, 118 D.P.R. 576 (1987); *In re Pedraza González*, 118 D.P.R. 87 (1986); *In re Aponte Arche*, 117 D.P.R. 837 (1986); *In re De Jesús Fuentes*, 117 D.P.R. 90 (1986); *In re Todd Arias*, 117 D.P.R. 10 (1986); *In re Rivera Lassen*, 116 D.P.R. 325 (1985); *In re Colón de Zengotita*, 116 D.P.R. 303 (1985). (Énfasis en el original.)

■ En el reciente caso de *In re Rodríguez Gerena I*, 132 D.P.R. 693, 697–698 (1993), donde se decretó la sepa-

(8) Véanse, en adición: *In re Maldonado*, 133 D.P.R. 346 (1993); *In re Rodríguez Gerena I*, 132 D.P.R. 693 (1993).

ración permanente del ejercicio de la abogacía y del notariado del allí querellado por haber violado la fe pública notarial en casos relacionados al traspaso de vehículos hurtados, mediante firmas falsificadas, expresamos, en lo pertinente, que:

> "Sin la fe del conocimiento, sobran los notarios. Por ende, su inobservancia es una falta grave sujeta a estrictas medidas disciplinarias. In re Echevarría González, 116 D.P.R. 423, 424 (1985); In re Félix, 104 D.P.R. 379 (1975). Las violaciones en declaraciones juradas de vehículos de motor no son la excepción. In re Nieves Rivera, [124 D.P.R. 803 (1989)]; In re González González, 119 D.P.R. 496 (1987)." ... In re Feliciano Crespo, 132 D.P.R. 69, 71 (1992).
>
> Reiteramos una vez más, la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosamente el mandato sobre comparecencia y conocimiento de los otorgantes, usando incluso las medidas supletorias de identificación visualizadas en la Ley Notarial. Ramírez Lebrón v. Registrador, 131 D.P.R. 76 (1992). Nuestros pronunciamientos van acorde con el Canon 35 [del Código de Ética Profesional, 4 L.P.R.A. Ap. IX], en lo relativo a la sinceridad y honradez personal y profesional que debe caracterizar la fe notarial en todo negocio jurídico: intereses de profundo contenido social lo exigen. (Énfasis suplido y en el original.)

## III

La Querella ante nuestra consideración presenta una vez más una instancia donde un notario con experiencia incumple con el principio rector de la Ley Notarial de Puerto Rico, a saber, la fe de conocimiento de los otorgantes. Procede que sancionemos al mismo.

Tomando en consideración la vasta obra notarial que ha ejecutado el querellado por más de cuarenta (40) años y su previo historial limpio y el hecho de que nadie en particular se vio afectado por sus actuaciones, entendemos procedente suspenderlo, únicamente, del ejercicio de la notaría; ello por el término de un (1) año.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García no intervino. La

610

Juez Asociada Señora Naveira de Rodón "disiente por entender que la suspensión del ejercicio de la notaría debe ser por dos años en lugar del año decretado".

