*In re* JOHN MEDINA LUGO.

*Número:* CP-92-395          *Resuelto:* 16 de mayo de 1994

*Reina Colón de Rodríguez, Procuradora General Interina, Ivonne Casanova Pelosi, Procuradora General Auxiliar,* y *Carlos Lugo Fiol, Procurador General Interino,* abogados de El Pueblo; *John Medina Lugo, pro se; Enrique Rivera Santana,* Comisionado Especial.

PER CURIAM:

# I

La Procuradora General presentó una querella disciplinaria contra el abogado John Medina Lugo, en la cual le imputaba una infracciones éticas dimanantes de su función pública como notario y por no ajustarse a la veracidad de los hechos al redactar documentos.

Previo a los trámites de rigor, el Comisionado Especial, Lcdo. Enrique Rivera Santana, formuló las determinaciones de hecho siguientes:

1. El 16 de septiembre de 1988, don Teodoro Ortiz Ocasio compareció a la Oficina Notarial del querellado, Lcdo. John Medina Lugo, con el propósito de autorizar una declaración jurada por la que Erasmo Ocasio Serrano afirmaba que la Sra. Providencia Rijo había trabajado en su finca durante algún tiempo en el año 1985. La declaración se otorgó bajo el affidavit número 2845 del libro de affidavit del notario John Medina Lugo. El texto completo de la declaración (Apéndice I del Informe del Procurador —documento estipulado por las partes) es el siguiente:

"I, Erasmo Ocasio Serrano, of legal age, U.S. citizen, farmer, employer Social Security No. 66–025–03–07, resident of Bo. (Ward) Bauta Abajo, Orocovis, Puerto Rico, with mailing address HC–01, Box 6615, Orocovis, Puerto Rico, 00720, under oath declare:

FIRST: That my personal circumstances are true and correct as stated above.

SECOND: That I am a bonafide farmer, owner of a farm located at Bo. Bauta Abajo, Road 590, Km. 5.5, Orocovis, P.R.

THIRD: That the above farm is formed by 75 Cuerdas (land measure exclusive of Puerto Rico, equivalent to 4,810 square yards each) of which 30 Cuerdas are dedicated to the planting and harvesting of coffee and other minor fruits.

FOURTH: That every year I have to hire new personnel to-

work in the farm, planting and harvesting coffee and other minor vegetables.

FIFTH: That MRS. PROVIDENCIA RIJO worked on the aforementioned farm from July 19, 1985 to December 23, 1985, harvesting coffee and other minor fruits.

SIXTH: That MRS. PROVIDENCIA RIJO works period, covered over 90 man-days prior to May 1, 1986.

SEVENTH: That MRS. PROVIDENCIA RIJO was earning a salary of Eighty ($80.00) dollars per week in cash, plus room and board. I did not record of the payments due to her illegal situation.

EIGHT: That I can recommend MRS. PROVIDENCIA RIJO in a favorable manner, being that during the time I have known her, she has observed a very respectfull behavior and is very well dedicated to her job.

NINTH: That everything stated above is the truth to the best of my knowledge, and I am willing to personally corroborate, if so needed.

SIGNED: ERASMO OCÁSIO SERRANO

AFFIDAVIT No. *2845*

Sworn and signed before me by MR. ERASMO OCASIO SERRANO, in Santurce, Puerto Rico, on this 16th day of September of the year 1988.

SIGNED: JOHN MEDINA LUGO

NOTARY PUBLIC"

2. Aunque el Notario dio fe de que el documento lo firmó ante él don Erasmo Ocasio Serrano, *esa no era la realidad*. La persona que firmó la declaración con el nombre de Erasmo Ocasio Serrano, lo fue su hijo Teodoro Ocasio Ortiz. Don Erasmo Ocasio Serrano había fallecido el 28 de septiembre de 1966 (—ver Apéndice II del Informe del Procurador— estipulado por las partes).

3. Para la fecha en que se suscribió ante el querellado la declaración jurada que antes se alude (Affidávit 2845), *éste sabía que don Erasmo Ocasio Serrano había fallecido*. El Notario había tenido ante sí copia de la declaración de herederos del finado.

4. El 5 de octubre de 1988 se suscribió otra declaración jurada ante el querellado (Apéndice I del Informe del Procurador —documento estipulado por las partes—), con idéntico texto al que antes se transcribió, excepto que éste se hizo para beneficio de la Sra. Mireya Sierra. La declaración la firmó también el Sr. Teodoro Ocasio Ortiz, con el nombre de su finado padre, don Erasmo Ocasio Serrano. El Notario dio fe de que fue el fenecido Ocasio Serrano quien firmó la declaración ante él. La declaración lleva el número 2923 del Registro de Affidávits del Notario John Medina Lugo.

5. En la misma fecha de 5 de octubre de 1988 se suscribió

otra declaración (Affidávit 2924, ver Apéndice I del Informe del Procurador —documento estipulado por las partes—), con idéntico texto, para beneficio de Altagracia Julia Jiménez Gómez. La declaración fue suscrita por Teodoro Ocasio Ortiz, a nombre del finado Erasmo Ocasio Serrano. El Notario dio fe de que la persona muerta había firmado en su presencia.

6. Otra declaración jurada idéntica se suscribió bajo iguales circunstancias el 18 de octubre de 1988, para beneficio de don Juan Bautista Francisco. (Affidávit 2970). El 24 de octubre se suscribió otra idéntica, también en iguales circunstancias, para beneficio de Josefa Hernández (Affidávit 2893). Otras tres, nuevamente con idéntico texto, se suscribieron el 30 de noviembre de 1988 (Affidávit 3027, 3028, 3033) para beneficio de Apolinar Moreta Herrera, Samuel Cárdenas Pacheco y Féliz (sic) Fernández Belén, respectivamente. Otra declaración más, también con texto idéntico, se suscribió el 15 de noviembre de 1988 (Affidávit 3077)([1]) para beneficio de Eladio Cuevas Peña. (Véase declaraciones en Apéndice I del Informe del Procurador —documentos estipulados por las partes—). En todas estas declaraciones el Notario dio fe de que firmó ante él don Erasmo Ocasio Serrano, cuando la realidad fue que quien firmó con el nombre de Erasmo Ocasio Serrano fue Teodoro Ocasio Ortiz. (Este hecho también fue estipulado por las partes). El Notario sabía, como antes se concluyó, que don Erasmo Ocasio Serrano había fallecido en el año 1966. (Énfasis suplido.) Informe del Comisionado Especial, págs. 4–7.

## II

Ciertamente, el notario Medina Lugo violó flagrantemente la Ley Notarial de Puerto Rico en varias ocasiones. En especial, su Art. 2 expositivo de que:

El notario es el profesional del Derecho que ejerce una función pública, *autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales.* Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. *La fe pública al notario es plena respecto a los hechos, que en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.* (Énfasis suplido.) 4 L.P.R.A. sec. 2002.

---

([1]) Aunque esta fecha es anterior al 30 de noviembre de 1988, el número de afidávit es más alto que los de las declaraciones que se firmaron el 30 de noviembre.

Legitimó la firma como de Erasmo Ocasio Serrano, aun cuando sabía que éste había fallecido previamente y quien firmaba las declaraciones juradas era Teodoro Ocasio Ortiz.

█ Reiteradamente hemos resuelto que " '[l]a fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental'. [Cuando se quiebra, todo el sistema se afecta]". *In re Rodríguez Gerena I*, 132 D.P.R. 693, 697 (1993). Véanse: *In re Nieves Rivera*, 124 D.P.R. 803 (1989); *In re González González*, 119 D.P.R. 496, 499 (1987); *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986).

## III

█ En cuanto a la dación de la fe notarial, "repetidamente hemos advertido a los notarios de su obligación de cumplir estrictamente con lo preceptuado en la Ley Notarial [de Puerto Rico]. Deben ser exigentes y abstenerse de dar fe notarial de declaración jurada si la persona que va a otorgar el documento o la declaración jurada no ha comparecido personalmente". *In re González González*, supra, pág. 499. Véase *In re Sánchez Ruiz*, 105 D.P.R. 848, 849 (1977). Ya en *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 837 (1979), seguido en *In re Cruz Cruz*, 126 D.P.R. 448, 451 (1990), habíamos dicho que "[e]l mecanismo para lograr correspondencia real y legítima entre persona y firma, es exigiendo la ley la comparecencia y conocimiento por el notario. *En otras palabras, la fe de conocimiento persigue evitar la suplantación de las partes en el otorgamiento*". (Énfasis suplido.) Véase *In re Rodríguez Gerena I*, supra. "Sin la fe del conocimiento, sobran los notarios. Por ende, su inobservancia es una falta grave sujeta a estrictas medidas disciplinarias." (Énfasis suprimido.) *In re Feliciano Crespo*, 132 D.P.R. 69, 71 (1992).

■ La conducta del Lcdo. Medina Lugo se apartó del deber de honradez y sinceridad que le impone el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.(²)

En resumen, la intervención del licenciado Medina Lugo en las declaraciones juradas señaladas constituyó una seria violación a la fe pública y a la función notarial que estamos comprometidos a guardar. *In re Maldonado Rivera*, 133 D.P.R. 207 (1993); *In re Tirado Saltares*, 118 D.P.R. 576 (1987); *In re Pedraza González*, 118 D.P.R. 87 (1986); *In re Aponte Arché*, 117 D.P.R. 837 (1986); *In re De Jesús Fuentes*, 117 D.P.R. 90 (1986); *In re Todd Arias*, 117 D.P.R. 10 (1986); *In re Rivera Lassen*, 116 D.P.R. 325 (1985); *In re Colón de Zengotita*, 116 D.P.R. 303 (1985).

Se trata de un patrón repetitivo, incompatible con el ejercicio de la abogacía y el notariado. Tomamos conocimiento judicial de nuestro *Per Curiam* suspendiéndolo *indefinidamente* el 26 de octubre de 1993 por razón de haber sido sentenciado en la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico por endosar falsamente un cheque federal.

En estas circunstancias, *procede dictar sentencia, esta vez, decretando que su separación sea permanente.*

La Juez Asociado Señora Naveira de Rodón no intervino. El Juez Asociado Señor Hernández Denton concurre con el resultado sin opinión escrita.

---

(²) *"Canon 35. Sinceridad y honradez*

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

"No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establezca u ocultar alguna que le es conocida.

"El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso es también altamente reprochable." 4 L.P.R.A. Ap. IX.