*In re* HÉCTOR DEL RÍO RIVERA y PEDRO OTERO FERNÁNDEZ.

*Número:* O-84-522     *Resuelto:* 26 de febrero de 1987

---

340

*Roberto Schmidt Monge, Procurador General, Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogados de El Pueblo; *Enrique González,* abogado de los querellados.

I

PER CURIAM: El Honorable Procurador General formuló querellas contra los Lics. Héctor Del Río Rivera y Pedro Otero Fernández por alegada conducta antiética incurrida por éstos en el ejercicio de la notaría y la abogacía. Al licenciado Del Río Rivera se le imputa la violación de la fe pública notarial y de los Cánones 26 (¹) y 35 (²) de Ética Profesional, y al Lcdo. Pedro Otero Fernández igual infracción de la fe pública notarial y del Canon 35. Los hechos que dan lugar a las querellas, según la prueba recibida por el comisionado, Lcdo. Eduardo Ortiz, son los siguientes:

El 9 de marzo de 1982 el Sr. Pedro Díaz Vidal visitó las oficinas de su abogado, el Lcdo. Héctor Del Río Rivera acompañado por su prima, la Sra. Carmen Julia Rivera Díaz y su esposo, el Sr. José Ramón Meléndez Collazo. De la prueba ver-

---

(¹)*"Canon 26. Derechos y limitaciones en relación con clientes*

"Ningún abogado está obligado a representar a determinado cliente y es su derecho el aceptar o rechazar una representación profesional. Es altamente impropio *aconsejar transacciones o actos en contra de la ley,* entablar pleitos viciosos, instigar falsas defensas sin que pueda el abogado justificar dichos actos con el pretexto de que al actuar así, lo hizo siguiendo las instrucciones de su cliente. El abogado debe obedecer siempre su propia conciencia y no la de su cliente.

"Es impropio de un abogado relevarse de responsabilidad por actos u omisiones negligentes en su gestión profesional." (Énfasis suplido.)

(²)*"Canon 35. Sinceridad y honradez*

"La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

"No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

"El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar causas. El destruir *evidencia documental o facilitar la desaparición de evidencia* testifical en un caso es también altamente reprochable."

tida en la vista el comisionado concluyó que la razón de la visita era para que el licenciado Del Río otorgara una escritura de una compraventa simulada entre el señor Díaz y los esposos Meléndez Collazo de una parcela de 5.226 cuerdas sita en Carolina, propiedad del señor Díaz. También determinó que el propósito de la venta simulada era hacerle un favor al señor Díaz Vidal, quien corría el riesgo de perder su finca de manos de un acreedor. Según los testimonios de los esposos Meléndez Collazo, el licenciado Del Río Rivera les informó que el señor Díaz Vidal debía un dinero y les preguntó si estaban dispuestos a firmar la escritura de compraventa. Ellos contestaron que estaban dispuestos a hacerlo como un favor.

Por razón de compromisos previos de trabajo el licenciado Del Río Rivera no pudo encargarse de la preparación del documento, que se solicitaba con urgencia, pero les condujo a la oficina del Lic. Pedro Otero Fernández con quien habló en privado mientras los contratantes permanecían en la sala de espera. El señor Díaz Vidal le dio la información necesaria al notario Otero Fernández y al día siguiente, 10 de marzo de 1982, se otorgó la Escritura Núm. 4, mediante la cual el señor Díaz Vidal "vendió" a su prima y al esposo el referido inmueble por el precio de $79,000; declarando en dicho documento que había recibido de los compradores con antelación al acto la cantidad de treinta y un mil dólares ($31,000) (*Exhibit* I, pág. 3) y éstos retuvieron $48,000 para pagar la hipoteca que gravaba la propiedad.

Al celebrarse el acto de otorgación de la escritura el notario Otero Fernández, aunque le dio la escritura a los "compradores" para que éstos la leyeran, en ningún momento les preguntó sobre la validez o certeza de lo allí expuesto, ni los orientó legalmente.

Mientras así actuaba el señor Díaz Vidal, su acreedor, Etanislao Figueroa, presentó demanda en cobro de su crédito y obtuvo sentencia el 5 de abril de 1983. Cuando vino en conocimiento del traspaso, su abogado promovió una investigación

criminal(³) por el Fiscal de Distrito cuya oficina cerró el expediente por haber prescrito el delito.

Luego de escuchar los testimonios y evaluar la prueba documental, el Comisionado Eduardo E. Ortiz, determinó los hechos aquí resumidos, y desestimó la teoría de defensa de los querellados basada en que ambos ignoraban que la venta era ficticia.

Hemos examinado el récord de la vista y encontramos bien fundada en la prueba la adjudicación de credibilidad hecha por el señor comisionado, con su conclusión central de que la citada escritura de compraventa Núm. 4 de 10 de marzo de 1982 ante el notario Otero Fernández es un documento falso y que el contrato en el mismo vertido es simulado y ficticio, pues "los esposos Meléndez Collazo y Rivera Díaz en verdad no compraron un inmueble al [señor] Díaz Vidal y no le entregaron causa alguna por el mismo". Informe del Comisionado, Conclusión de Hecho Núm. 7. El propósito de la compraventa simulada fue evadir la ejecución del crédito del acreedor, el Sr. Etanislao Figueroa.

## II

### A

■ En *In re Vélez*, 103 D.P.R. 590 (1975), rechazamos y condenamos la participación consciente de un abogado, ya fuere como funcionario o parte, en el *asesoramiento*, redacción u otorgamiento de un documento simulado. Indicamos en dicha ocasión que "[l]o simulado, sinónimo de falso y fingido, en esencia es contrario a la verdad; virtud que constituye el

---

(³) Bajo el epígrafe *Traslado fraudulento de bienes por el deudor*, el Art. 186 del Código Penal, 33 L.P.R.A. sec. 4304, sanciona a todo deudor que enajenare sus bienes con el propósito de defraudar a sus acreedores, y el Art. 35 (33 L.P.R.A. sec. 3172) declara *autores* criminalmente responsables, entre otros, a los que toman parte directa en la comisión del delito y a los que instigan, inducen o ayudan a otra persona a cometer el delito.

ideal más alto al cual debemos aspirar en nuestra comunidad que se rige al amparo del imperio de la ley". Ibíd., pág. 598. La conducta anteriormente sancionada no ha de limitarse al abogado que en su función notarial autoriza el negocio simulado o a aquel que interviene como parte, sino que también incluye al que conociendo la ilegalidad del acto promueve su realización.

El notario por su condición de depositario y guardador de la fe pública tiene la responsabilidad de mantenerse, en todas sus actuaciones, en un plano de objetividad y legalidad en que sirva a los que solicitan consejo y servicio con estricta honradez, y rechace soluciones o propósitos dirigidos a burlar la ley en perjuicio de tercero. En igual obligación, el abogado que en nombre de una falsa lealtad al cliente lo apoya y ayuda en empresa deshonesta, traiciona la encomienda de sinceridad y honradez del Canon 35. Los abogados no deben convertirse en meros instrumentos de sus clientes. *Quiñones* v. *Jiménez Conde*, 117 D.P.R. 1 (1986).

De los testimonios recibidos y del informe del comisionado se desprende claramente que el licenciado Del Río Rivera incurrió en conducta antiética al tener conocimiento de que se iba a realizar una transacción ilícita y ayudar a la realización de ésta. Los testimonios de los señores Meléndez Collazo y Rivera Díaz nos merecen total credibilidad. Así también lo concluyó el comisionado. No hay dudas que al momento de acudir ante el licenciado Del Río Rivera éste conocía la naturaleza ilícita y fraudulenta de la transacción que se le pedía autorizar. Aunque personalmente no autorizó el documento, acudió ante un compañero de profesión para que éste lo realizara. El licenciado Del Río Rivera violó el Canon 26 de los Cánones de Ética Profesional al aconsejar y ayudar a realizar una transacción o acto en contra de la ley. Violó a su vez el Canon 35 al ayudar a redactar un documento cuyo

contenido no se ajustaba a los hechos. *In re Vélez*, supra. De ordinario, esto constituye base suficiente para el desaforo.

## B

En cuanto al querellado, licenciado Otero Fernández, entendemos que no se probó que éste violara el Canon 35, pues ninguno de los testigos aseveró que éste conociere la falsedad de lo vertido en la escritura. Ni el señor Meléndez Collazo ni la señora Rivera Díaz le informaron al querellado Otero Fernández que en realidad ellos no estaban comprando el inmueble. La única prueba que se desfiló es en el sentido de que el licenciado Del Río Rivera y el licenciado Otero Fernández se reunieron en la oficina de éste para discutir lo referente a la otorgación de la escritura. De ese mero hecho no se puede inferir que el querellado Otero Fernández tuvo conocimiento de la naturaleza de la transacción.

Sin embargo, mediante su conducta infringió la fe pública notarial al autorizar la otorgación de una escritura sin hacer las averiguaciones mínimas que requieren las normas más elementales de la profesión. El notario, "como depositario de la fe pública —de la confianza de los particulares y del Poder público—, ha de tener un grado de responsabilidad muy considerable". M. Sanahuja y Soler, *Tratado de Derecho Notarial*, Barcelona, Ed. Bosch, 1945, T. I, pág. 340. Por tal razón hemos expresado que su función "es faena de tiempo y paciente integración de todos los elementos documentales, que sufre en su calidad con la festinación y la atracción de los atrechos fáciles". *Empire Life Ins. Co. v. Registrador*, 105 D.P.R. 136, 139 (1976). También se debe evitar la "intervención notarial urgente e incidental, más bien ad hoc, en la cual se cae en la superficialidad y en el peligro potencial de convertirse en un simple observador de un negocio jurídico", *In re Laboy,* 113 D.P.R. 476, 481 (1982), corriendo el riesgo de incurrir en serias faltas profesionales. Ibíd.

■ Mediante el acto notarial no sólo se afectan los intereses de los que intervienen como parte, sino también de aquellos otros que tengan relaciones jurídicas con ellos. Constituyendo la responsabilidad del notario una en beneficio de los otorgantes y de terceros, Sanahuja, *op. cit.*, pág. 343, se le exige el cumplimiento de ciertos deberes: (1) indagar la voluntad de los otorgantes; (2) redactar los documentos que reflejen fielmente la intención de ellos; (3) investigar los hechos y datos de los que depende la eficacia o validez del negocio; (4) dar a los otorgantes las instrucciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y las consecuencias del negocio, y se percaten de los riesgos que corren al efectuarlos. *Chévere* v. *Cátala*, 115 D.P.R. 432, 438 (1984).

■ Examinada la conducta del notario Otero Fernández, encontramos que incurrió en una infracción de la fe pública notarial. Su actuación se limitó a redactar la escritura basado en lo expresado por el licenciado Del Río Rivera y por el "vendedor", señor Díaz Vidal. Al momento de firmarla se la entregó a los "compradores" para que la leyeran, y en ningún momento preguntó a los otorgantes sobre el carácter y veracidad de lo contenido en el documento autorizado por él. De esta forma, su participación en todo el proceso desvirtuó el propósito de la función notarial.

> . . . Por tradición, y en nuestra patria además por expresión legislativa, el notario no es simple observador del negocio jurídico que ante él se realiza limitando su actuación a cerciorarse de la identidad de partes y autenticidad de las firmas. Su función, que no es privada, sino pública, trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta. *In re Meléndez Pérez,* 104 D.P.R. 770, 774–775 (1976).

■ Le corresponde al notario el deber de averiguar la intención de las partes que acuden a solicitar sus servicios y de orientarlos para que conozcan el significado y el alcance de

las cláusulas de la escritura que ha redactado. Al redactar y notarizar un documento el abogado no puede sustraerse de la realidad de que los otorgantes, en la gran mayoría de los casos, son personas legas que tienen mucha dificultad en leer y comprender los escritos legales. En estas circunstancias el notario no puede "limita[r] su intervención rutinaria a leer o dar a leer el documento a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes". *In re Cancio Sifre*, 106 D.P.R. 386, 397 (1977).

## III

Los dos querellados han ejercido como abogados por más de dos décadas. El licenciado Del Río Rivera fue admitido a la profesión y al notariado en el 1968. El licenciado Otero Fernández fue admitido en el 1960. La buena reputación de ambos quedó establecida ante el señor comisionado y ninguno ha sido disciplinado anteriormente por este Tribunal. Sin embargo, la conducta desplegada por ambos abogados en la simulación de la compraventa de un bien inmueble con el propósito de defraudar a un acreedor constituye conducta altamente lesiva a las normas más elementales de la profesión de la abogacía y a la justicia en nuestro país.

*Resolvemos que el Lcdo. Héctor Del Río Rivera actuó impropia, indebida e ilegalmente por su participación en la transacción simulada descrita anteriormente. Se dicta sentencia que decreta su suspensión del ejercicio de la profesión de Abogado-Notario por el término de un (1) año.*

*En cuanto al notario Pedro Otero Fernández, como éste no tuvo conocimiento de la naturaleza de la transacción, limitaremos en esta ocasión nuestra acción disciplinaria a amonestarle y apercibirle que de incurrir en este mismo tipo de conducta en el futuro se le impondrán sanciones más severas.*

*Se dictará la correspondiente sentencia.*

El Juez Asociado Señor Hernández Denton emitió un voto concurrente y disidente al cual se unió el Juez Asociado Señor Negrón García. El Juez Asociado Señor Ortiz no intervino.

—O—

Voto concurrente y disidente emitido por el Juez Asociado Señor Hernández Denton, al cual se une el Juez Asociado Señor Negrón García.

Estoy conforme con lo dispuesto por el Tribunal en cuanto al Lic. Héctor Del Río Rivera. Sin embargo, en cuanto al Lic. Pedro Otero Fernández le suspendería del ejercicio de la notaría por un término de seis meses, por haber violado la fe pública notarial depositada en él. *In re Meléndez Pérez*, 104 D.P.R. 770 (1976); *In re Laboy*, 113 D.P.R. 476 (1982); *Chévere* v. *Cátala*, 115 D.P.R. 432 (1984).

La función del notario no es la de un observador pasivo cuya responsabilidad se limita a la redacción de un documento:

El notario tiene una serie de deberes colaterales a este ejercicio: tiene una función magisterial, tiene una función didáctica, y por tanto, debe asesorar, debe aconsejar, debe instruir, debe explicar y debe orientar a las personas que ante él comparecen. De tal manera que el ignorante está protegido, según la sociedad, porque sabe que cuando concurre ante el notario no lo va a dejar desamparado en la ignorancia, sino que le va a explicar el valor y la fuerza del instrumento. Por tanto, para poder asesorar y para poder aconsejar, debe actuar personalmente, y por tanto, debe escuchar personalmente a las partes, qué es lo que las partes quieren. Falta a la ética el notario, no s[ó]lo que dice que da fe de lo que no vio, sino que dice o interpreta la voluntad que no recibió. O. Pérez Fernández, *Ética y responsabilidad del notario,* en *Memoria de la II jornada notarial de Norte, Centro América y el Caribe,* San Juan, Inst. Der. Not. Reg. P.R., 1986, págs. 101, 105.

Toda vez que el incumplimiento de su deber notarial se produce como resultado de la omisión de las gestiones necesarias y no es el producto de una conducta activa, suspendería al licenciado Otero Fernández sólo por seis (6) meses.