En el Tribunal Supremo de Puerto Rico

| IN RE:  IN RE:   LUIS R. TORRES OLMEDA Querellado   .V | Conducta Profesional  TSPR98-48 |
|---|---|

Número del Caso: AB-97-102

Abogados Parte Querellante: Hon. Carlos Lugo Fiol, Procurador General

Lic. Yvonne Casanova Pelosi
Procuradora General Auxiliar

Abogados Parte Querellada: Lic. Fabiola Fernández Chaves

Abogados Parte Interventora:

Tribunal de Instancia: Superior

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/23/1998

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Lic. Luis R. Torres Olmeda

AB-97-102

PER CURIAM

San Juan, Puerto Rico, a 23 abril de 1998.

I

Mediante carta fechada el 16 de mayo de 1995 compareció la Sra. Ana C. Alemañy ante el Secretario de Justicia de Puerto Rico en representación de la Corporación para el Financiamiento de la Vivienda en P.R. (en adelante C.F.V.P.R.) a los efectos de presentar una queja contra el Lcdo. Luis R. Torres Olmeda. El Secretario de Justicia refirió el asunto a la Oficina del Procurador General de Puerto Rico, quien procedió a informar al Lcdo. Torres Olmeda de la queja presentada y a requerirle que expusiera su posición con respecto a los asuntos planteados.

El 27 de junio de 1995 el querellado escribió carta a la Lcda. Delmarie Vega Lugo, Procurador General Auxiliar, exponiendo su posición. Posteriormente, el 2 de mayo de 1996, compareció nuevamente el Lcdo. Torres Olmeda ante el Procurador General.

El 5 de agosto de 1997 el Procurador General presentó ante este Tribunal su informe sobre la queja radicada. Mediante Resolución del 9 de octubre de 1997 concedimos al Lcdo. Torres Olmeda término para que mostrara causa por la cual no debíamos separarlo indefinidamente del ejercicio de la abogacía.

Luego de varias prórrogas, el Lcdo. Torres Olmeda presentó Réplica al Informe del Procurador General el 23 de enero de 1998.

El 3 de febrero de 1998 compareció ante nos el Procurador General mediante "Dúplica" a la réplica del querellado. A la luz de las comparecencias del Procurador General y del Lcdo. Torres Olmeda y de nuestra Resolución de 9 de octubre de 1997 procedemos a resolver.

II

C.F.V.P.R. es una subdivisión del Banco Gubernamental de Fomento. Dicha corporación le concedió a la Sociedad Asmy, S.F. (en adelante Asmy) un préstamo por la cantidad de $734,400.00 dólares para la construcción de un edificio de veinte (20) apartamentos. Para garantizar el préstamo, se constituyó una primera hipoteca y se firmaron acuerdos que contenían las condiciones bajo las cuales se concedía dicho financiamiento. Entre estos acuerdos había una estipulación a los efectos de que las unidades tenían que venderse a los precios convenidos en los documentos del préstamo.

En marzo de 1994 Asmy comenzó a vender los apartamentos, actuando como notario otorgante de los contratos de compraventa el Lcdo. Torres Olmeda. C.F.V.P.R. recibió prontamente los pagos relacionados con las liberaciones parciales de las hipotecas otorgadas pero no las correspondientes escrituras de liberación. No fue hasta el 8 de noviembre de 1994 que el notario autorizante, Lcdo. Torres Olmeda, le

envió a C.F.V.P.R. las dieciocho (18) escrituras de compraventa y liberación de hipoteca para su firma.

Al cotejar las escrituras, la Sra. Alemañy se percató que los precios de compraventa eran más altos que los aprobados por la C.F.V.P.R. Por tal motivo, la quejosa no firmó siete (7) de las dieciocho (18) escrituras sometidas para su firma, enterándose en ese momento que el Lcdo. Torres Olmeda había expedido copias certificadas de las escrituras sin contar con la firma de C.F.V.P.R. en las escrituras originales. Las copias certificadas expedidas fueron presentadas por el Lcdo. Torres Olmeda al Registro de la Propiedad para su inscripción. En dichas copias certificadas el notario expresó falsamente que en los originales protocolizados constaban las firmas e iniciales de las partes otorgantes.

En su comparecencia ante el Procurador General, y en respuesta a las alegaciones de la Sra. Alemañy, el Lcdo. Torres Olmeda señaló que el aumento de precios era una controversia contractual que tendría que dilucidarse entre Asmy y C.F.V.P.R.. En cuanto a lo relacionado con la expedición de copias certificas de las escrituras a las que les faltaba la firma de una de las partes contratantes, éste indicó lo siguiente:

> "...la copia certificada de la escritura de compraventa se adelantó con la anuencia y la autorización de la Sra. Ana Carmen Alemañy manifestada por conducto de su asesora legal la Lcda. Caroll Cabañas al aceptar como correcto y cierto el pago de la liberación de la unidad vendida y tener ésta pleno conocimiento de su expedición."[1]

El Procurador General, luego de estudiar las contenciones tanto de la queja como de las respuestas del Lcdo. Torres Olmeda, presentó ante este Tribunal informe con fecha de 5 de agosto de 1997. En el mismo sostiene que éste incurrió en conducta constitutiva de violación a la Ley Notarial toda vez que cuando se otorga un instrumento público el notario tiene que recibir las firmas de los comparecientes dentro del mismo día natural del otorgamiento.

---

[1] Carta del Lcdo Torres Olmeda de 27 de junio de 1995. Anejo 2 al Informe del Procurador General.

Concluyó el Procurador General, además, que la conducta del notario de epígrafe al expedir copias certificadas de escrituras a cuyos originales les faltaba la firma de uno de los comparecientes, constituyó una crasa violación a los Artículos 28 y 39 de la Ley Notarial,[2] a la Regla 49 del Reglamento Notarial de Puerto Rico[3] y a los Cánones 35 y 38 del Código de Etica Profesional.[4]

El 9 de octubre de 1997, este Tribunal emitió la Resolución antes mencionada, concediéndole al Lcdo. Torres Olmeda el término de quince (15) días para que mostrara causa por la cual no se le debería separar indefinidamente del ejercicio de la abogacía. Luego de solicitar varias prórrogas para cumplir, las cuales le fueron concedidas, el 23 de enero de 1998 el Lcdo. Torres Olmeda radicó escrito titulado "Réplica y Solicitud de Desestimación del Informe del

---

[2] Ley Núm. 75 de 2 de julio de 1987, artículos 28 y 39, 4 L.P.R.A. secs. 2046 y 2061.
[3] 4 L.P.R.A. Ap. XXIV
[4] 4 L.P.R.A. Ap.IX.

Procurador General y/o Paralización de los Procedimientos". Sostuvo que la controversia sobre las escrituras debe resolverse en un proceso judicial plenario. Informa haber radicado demanda en contra del Banco Gubernamental de Fomento, su Presidente, el Sr. Marcos Rodríguez Ema, la Sra. Ana Carmen Alemañy Calderón, C.F.V.P.R. y varios de sus empleados donde reclama los daños sufridos por él, los titulares de las propiedades y solicita el reconocimiento por parte de la demandada de las Liberaciones de Hipotecas. Solicita paralicemos el procedimiento disciplinario hasta tanto se resuelva la demanda radicada y/o que declaremos la querella no ha lugar.

El 3 de febrero de 1998 compareció el Procurador General mediante escrito titulado "Dúplica". Sostiene que el récord ante nos es claro y que de él surgen las omisiones y deficiencias notariales señaladas en su Informe. Se opone a la paralización del procedimiento disciplinario debido a que nada tiene que ver la demanda con las faltas imputadas y porque la misma no procede en derecho.

### III

El Artículo 28 de la Ley Notarial de Puerto Rico, supra, requiere que en el otorgamiento de un instrumento público en el que no hubiere testigos, o si éstos fueren de conocimiento, el notario reciba las firmas de los comparecientes dentro del mismo día natural del otorgamiento. Sin embargo, cuando comparecen testigos instrumentales es necesaria la unidad de acto en el otorgamiento.[5]

De la exposición fáctica anterior surge que el Lcdo. Torres Olmeda faltó a este deber que le impone la ley ya que, a pesar de que de las aludidas escrituras constan fechas de otorgamiento que se extienden desde el 25 de marzo de 1994 hasta el 22 de septiembre del mismo año, no fue hasta el 8 de noviembre de 1994 que la representante de C.F.V.P.R. firmó once (11) de éstas, y las otras siete (7) aún no han sido firmadas.

El Artículo 39 de la Ley Notarial de Puerto Rico, supra, dispone además que:

"Una copia certificada es el traslado literal, total o parcial, de un documento otorgado ante Notario, que libre éste o el que tenga legalmente a su cargo su protocolo, con certificación respecto a la exactitud del contenido y al número de folios que contenga el documento, así como la firma, signo, sello y rúbrica y, en todos los folios, el sello y rúbrica del notario autorizante".

En lo referente a dicho artículo, la Regla 49 del Reglamento Notarial de Puerto Rico regula las formalidades que se deberán cumplir para que una copia certificada de un instrumento constituya un título perfecto. En lo pertinente, dicha Regla dispone lo siguiente:

"...(C) La certificación de una copia expresará que en el original aparecen:

(1) las firmas e iniciales de los comparecientes.
(2) ...
(3) ..."

Al expedir una copia certificada de algún instrumento público el notario expresa que en el original protocolizado constan ciertos datos, entre los que se encuentran las firmas e iniciales de los comparecientes. Al momento de expedir las copias certificadas de las escrituras objeto de la presente queja, aún <u>faltaba la firma de una de las partes en todas las escrituras</u>. Además, las copias certificadas de dichas escrituras fueron posteriormente presentadas en el Registro de la Propiedad para su correspondiente inscripción como si las originales hubieran sido firmadas. Dicha conducta es constitutiva de una crasa violación al Artículo 39 de la Ley Notarial de Puerto Rico, <u>supra</u>, y a la Regla 49 del Reglamento Notarial de Puerto Rico.

Habiendo examinado el expediente, concurrimos con el Procurador General a los efectos de que:

"...*entendemos que no existe evidencia de que haya habido de parte del notario de epígrafe intención fraudulenta alguna al efectuar el cambio de valor que habían acordado tanto C.F.V.P.R. como ASMY, S.E. en que se vendieron las propiedades envueltas. Analizada la argumentación de las partes en este caso, es nuestra opinión que aunque no surge dicha intención fraudulenta subsiste una controversia legítima sobre la facultad que tenía o no ASMY y el notario de epígrafe para efectuar dicho cambio, la cual a nuestro entender podría*

---

[5] Regla 35 del Reglamento Notarial. 4 L.P.R.A. Ap. XXIV.

*adjudicarse en su día en nuestros tribunales.*

> Por otro lado, del análisis de la prueba surgen unos hechos sobre los que no existe controversia alguna y los cuales indudablemente inciden sobre disposiciones y obligaciones impuestas por la Ley Notarial de Puerto Rico a todos los Notarios."[6]

Un notario puede corregir, mediante acta de subsanación, errores u omisiones de una escritura que no afecten el negocio jurídico llevado a cabo en la misma. Si dichos errores afectan el negocio jurídico, el notario tendrá que otorgar una escritura de rectificación con la comparecencia de las partes. Ley Notarial de Puerto Rico, 4 L.P.R.A. secs. 2047-2050.

El argumento esbozado por el notario a los efectos de que contaba con la anuencia de la Sra. Ana Carmen Alemañy para adelantar las copias certificadas es, a todas luces, improcedente. La obligación de la gestión notarial es una de carácter personal, indivisible e indelegable, de completa responsabilidad del notario autorizante. **In Re Laboy**, 113 D.P.R. 476 (1982). La alegada anuencia de una parte, aún si se hubiera obtenido, no puede constituir base para el incumplimiento de los deberes que la ley le impone a los notarios. Repetidamente hemos advertido a los notarios de su obligación de cumplir estrictamente con lo preceptuado en la Ley Notarial. **In Re Vargas Hernández**, Op. de 30 de marzo de 1994, 135 D.P.R. _____, 94 J.T.S. 54.

IV

Los actos incurridos por el Lcdo. Torres Olmeda son, además, constitutivos de violación a los Cánones 35 y 38 del Código de Etica Profesional, supra.

El Canon 35 del Código de Etica Profesional exige al abogado ejercer su profesión con sinceridad y honradez, así como conducirse de manera digna y honorable, tanto en su función de abogacía como en su función notarial.

Es menester recordar que "[e]l notario es un profesional del derecho que ejerce una función pública para robustecer, con una presunción de

verdad, los actos en que interviene, para colaborar en la formación correcta del negocio jurídico y para solemnizar y dar forma legal a los negocios jurídicos privados....” Enrique Giménez Arnau, **Introducción al Derecho Notarial**, Ed. Revista de Derecho Privado (1944), pág.44. La notaría es una función de cuidado que debe ser ejercida con suma diligencia y celo profesional. **In Re Cruz Ramos**, 127 D.P.R. 1005 (1991); **In Re Rodríguez Mena**, 126 D.P.R. 205 (1990); **In Re Vergne Torres**, 121 D.P.R. 500 (1988). En el ejercicio de esta función el notario viene obligado a cumplir estrictamente con la Ley Notarial, supra, los Cánones de Etica Profesional, supra, y el contrato entre las partes. La inobservancia de esta obligación demuestra una indiferencia

que constituye una violación a las normas éticas que rigen la profesión legal[7] y expone al notario a la acción disciplinaria correspondiente. **In Re Rodríguez Báez**, Op. del 31 de enero de 1992, 129 D.P.R. ____, 92 J.T.S. 15; **In Re Bringas Rechani**, 128 D.P.R. 132 (1991). Es obligación de los abogados, como de los notarios, conocer y cumplir a cabalidad las disposiciones legales que regulan el ejercicio de su profesión, así como la doctrina y la jurisprudencia. **In Re Feliciano Ruiz**, 117 D.P.R. 269 (1987).

Reiteradamente hemos resuelto que un notario que falta a la veracidad de los hechos incurre en una de las faltas más graves que éste puede cometer, ya que la certificación de un hecho falso constituye un acto detrimental a la fe pública. **In Re Vera Vélez**, Op. del 6 de junio de 1994, 136 D.P.R. ___, 94 J.T.S. 88; **In Re Sergio Peña Clos**, Op. del 29 de marzo de 1994, 135 D.P.R. ___, 94 J.T.S. 41. “La fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo el esquema de autenticidad documental”. **In Re Feliciano Ruiz**, 117 D.P.R. 269 (1986). La ausencia de la firma de uno de los comparecientes es

---

[6] Informe del Procurador General, pág. 4.
[7] **In Re Nieves Rivera**, 124 D.P.R. 803 (1989); **In Re Santiago González,**

causa de nulidad del instrumento e implica, a su vez, una violación a la fe pública notarial. **In Re Platon**, 113 D.P.R. 273 (1982).

El Cánon 38 del Código de Etica Profesional exige de los abogados que se esfuerzen, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión. Otorgar un documento Notarial en violación de la Ley Notarial de Puerto Rico constituye una violación a este precepto ético. **In Re Ríos Rivera**, 119 D.P.R. 586 (1987); **In Re Del Río Rivera**, 118 D.P.R. 339 (1987).

Por todo lo expuesto, resolvemos que el Lcdo. Torres Olmeda infringió las disposiciones de la Ley Notarial de Puerto Rico, supra, y los Cánones 35 y 38 del Código de Etica Profesional de Puerto Rico, supra, en cuanto exigen que todo abogado actúe con honestidad y sinceridad en su gestión profesional y mantenga el honor y la dignidad de la profesión legal. Se dictará sentencia mediante la cual se separe indefinidamente al abogado-notario Luis R. Torres Olmeda del ejercicio de la notaría.

121 D.P.R. 580 (1988).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Luis R. Torres Olmeda                    AB-97-102

SENTENCIA

San Juan, Puerto Rico, a 23 de abril de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se suspende indefinidamente de la práctica del notariado al Lcdo. Luis R. Torres Olmeda.

*Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.*

*Isabel Llompart Zeno*
*Secretaria del Tribunal Supremo*