CP-2001-8                                  1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>     Félix J. Montañez Miranda | Querella<br><br>2002 TSPR 122<br><br>157 DPR _____ |

Número del Caso: CP-2001-8


Fecha: 18/junio/2002


Oficina del Procurador General:
                    Lcda. Minnie H. Rodríguez López
                    Procuradora General Auxiliar


Abogado de la Parte Querellada:
                    Lcdo. Víctor P. Miranda Corrada



Materia: Conducta Profesional
(La suspensión será efectiva el dia 18 de septiembre de 2002 fecha en que
se le notificó al abogado de su suspensión inmediata.)

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correcciones del proceso
        de compilación y publicación oficial de las decisiones del
        Tribunal. Su distribución electrónica se hace como un servicio
        público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Félix J. Montañez Miranda

CP-2001-8

PER CURIAM

San Juan, Puerto Rico, a 18 de junio de 2002.

¿Puede un notario autorizar declaraciones de autenticidad o testimonios cuando le consta la falsedad de su contenido? Por entender que dicha actuación viola el deber de sinceridad y honradez contenido en el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. IX C. 35, contestamos en la negativa.

I

A tenor con lo ordenado por este Tribunal, el Procurador General sometió un Informe para que decidiéramos si procedía la presentación de una querella en contra del Lcdo. Félix J. Montañez Miranda (en adelante, licenciado Montañez Miranda o el querellado) por violaciones éticas

incurridas en la redacción de un affidávit y por la presentación de un escrito falso al Tribunal de Primera Instancia. Después de examinar dicho Informe, ordenamos al Procurador General que formulara la querella correspondiente. Éste así lo hizo.

En síntesis, el Procurador sostuvo que el licenciado Montañez Miranda incurrió en una violación del Canon 35 de los Cánones de Ética Profesional, *supra*, al no observar su deber de sinceridad y honradez, toda vez que autorizó un affidávit sobre contrato de compraventa de bienes muebles donde se afirmaba que los vendedores eran los únicos dueños en pleno dominio, mientras conocía que la realidad era otra. El Procurador sostuvo que el querellado también incurrió en una violación de dicho canon cuando sometió un escrito al Tribunal de Primera Instancia, el cual no se ajustaba a la realidad de los hechos.

Después de examinar la contestación del abogado a dichos cargos nombramos un Comisionado Especial para oír y recibir la prueba. El Comisionado Especial señaló la celebración de una conferencia con antelación a la vista y le ordenó a las partes que presentaran un informe conjunto haciendo constar la prueba documental a ofrecerse en evidencia y las estipulaciones formuladas por las partes. La vista evidenciaria se celebró el 26 de septiembre de 2001. El único testimonio fue el del querellado y las partes estipularon la prueba documental. El Comisionado Especial, cumpliendo con nuestra encomienda, rindió oportunamente su Informe, en el cual recogió las estipulaciones

de las partes y formuló las determinaciones de hechos correspondientes.

Según dicho Informe, el caso de autos se desarrolla en medio de dos acciones civiles que se estaban tramitando paralelamente. La señora Alicia Torrelló Blanco y su esposo presentaron una acción civil contra su madre, la señora Rose Blanco Torres, para recobrar la posesión del negocio "Restaurant Paraíso del Mar" que tenían arrendado en un local ubicado en Loíza. El señor Eloy Quiñones es el dueño y arrendador de dicho solar. El 12 de junio de 1996, el Tribunal de Primera Instancia por virtud de un acuerdo suscrito por las partes, determinó que la madre y su esposo eran dueños de un sesenta por ciento (60%) del "Restaurant Paraíso del Mar", mientras que su hija y su esposo eran dueños del cuarenta por ciento (40%) restante. Según la sentencia, las partes debían dividirse el producto de la venta del negocio en esa misma proporción. En lo que se vendía el negocio, el tribunal dispuso que las ganancias netas del mismo se dividirían mensualmente en dicha proporción. Se hizo constar, además, que al Sr. Eloy Quiñones se le adeudaban trece mil dólares ($13,000) por concepto de cánones de arrendamiento atrasados. El tribunal ordenó que se pagaría según la proporción señalada. Esta sentencia advino final y firme.

Precisamente, la segunda acción civil consistió en una acción sobre desahucio que presentó el Sr. Eloy Quiñones, propietario del solar donde está ubicado el "Restaurant Paraíso del Mar", contra la madre y su esposo. El querellado en este

caso asumió la representación legal de estos el 7 de julio de 1997. Según surge de los documentos estipulados, en la minuta del 24 de octubre de 1997 de dicho caso, la madre y su esposo por conducto del querellado llegaron a un acuerdo con el señor Quiñones donde abandonarían en o antes del 2 de enero de 1998 el local debido a la falta de pago de los cánones de arrendamiento.

Mientras ocurría lo anterior, la representación legal de la hija y su esposo se comunicó el 5 de septiembre de 1997 con el querellado para que estuviese enterado de lo sucedido en el primer caso. Procedió a informarle el contenido de la sentencia y le notificó que el 40% del valor del "Restaurant Paraíso del Mar" le pertenecía a la hija. Ese mismo día le envió copia de la referida sentencia al querellado. El querellado en ningún momento ha negado haber desconocido dicha sentencia.

A pesar de haber sido enterado de la referida sentencia, casi tres (3) meses después, el 21 de noviembre de 1997 el querellado autorizó un affidávit donde la madre y su esposo comparecieron para vender como únicos dueños en pleno dominio unos bienes muebles del negocio. Según el Informe del Comisionado Especial, en dicho affidávit ellos suscribieron un contrato de compraventa de bienes muebles donde vendían los enseres y la utilería del negocio a la Sra. Mirna Salas Morales por la cantidad de seis mil ($6,000) dólares.

Tal documento excluyó a la hija y su esposo de dicha transacción en perjuicio de su participación en el negocio. En

ningún momento, estos recibieron suma alguna por concepto de dicha transacción. Tal curso de acción era claramente incompatible con lo dictaminado en la referida sentencia en que declaraba a la hija y su esposo dueños de un 40% del negocio, y la cual el querellado conocía.

Luego de autorizado dicho documento, el 17 de diciembre de 1997, el querellado asumió la representación legal de la madre en el primer caso que ya estaba en sus últimos procedimientos. El querellado compareció para oponerse a una solicitud de ejecución de sentencia que presentó la hija y su esposo. En dicha moción en oposición el querellado solicitó que se pospusiera la ejecución hasta que se finalizaran los procedimientos en el caso sobre desahucio. Como cuestión de hecho es notable señalar que ya se había acordado por las partes el desenlace del caso sobre desahucio, que consistía en que la madre y su esposo abandonarían el local. Es decir, no había nada más que disponer en ese asunto. Esto significa que el querellado solicitó que se postergara la ejecución de la sentencia hasta que se acabaran los procedimientos de un desahucio que ya él conocía que había finalizado. De todas formas, el tribunal ordenó que se ejecutara la sentencia dictada en el mencionado caso.[1]

Así las cosas, la hija y su esposo comparecieron ante el Procurador General y presentaron una queja imputándole al

---

[1] Cabe señalar que dicha ejecución de sentencia ha sido paralizada ya que la Sra. Rose Blanco Torres y su esposo Moisés

querellado que a pesar de que éste tenía conocimiento de la sentencia dictada donde se reconocían dos dueños en proporción 60-40 del "Restaurant Paraíso del Mar", redactó un affidávit que comprendía un contrato de compraventa de bienes muebles del negocio en el cual hizo constar que la madre y su esposo comparecían como únicos dueños de la propiedad objeto de dicho contrato. Dicha queja es la que origina la querella de autos.

## II

En síntesis, la controversia ante nos se circunscribe a dilucidar si un notario puede autorizar testimonios de legitimación de firmas cuando le consta la falsedad de su contenido. Veamos.

El Canon 35 del Código de Ética Profesional, *supra*, apunta el deber de sinceridad y honradez que debe desplegar todo abogado y dispone concretamente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> El abogado debe **ajustarse a la sinceridad** de los hechos al examinar los testigos, **al redactar affidavit** u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar

Gómez se acogieron al procedimiento del Capítulo 13 del Código de Quiebras Federal.

> la desaparición de evidencia testifical
> en un caso es también altamente
> reprochable. (Énfasis suplido).

Ceñirse a la verdad según el Canon 35, va más allá que ocasionar perjuicio a tercero o deliberadamente defraudar o engañar. Se infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común, se pretende realizar actos o negocios de trascendencia jurídica. Más que un ideal irrealizable, la verdad es atributo inseparable del ser abogado y, sin la misma, no podría la profesión jurídica justificar su existencia. In re Martínez, res. el 25 de junio de 1999, 99 TSPR 119. Las obligaciones y deberes establecidos en este canon constituyen normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión. In re Sepúlveda, res. el 24 de octubre de 2001, 2001 TSPR 153.

Un notario no sólo quebranta la fe pública notarial sino también socava la integridad de la profesión al incumplir con el deber de honradez y sinceridad que a todo abogado le impone este canon. In re Vera Vélez, res. el 5 de abril de 1999, 99 TSPR 46. Faltar a la veracidad de los hechos constituye una de las faltas más graves en que pueda incurrir un notario. In re Gonzalez Maldonado, res. el 20 de diciembre de 2000, 2000 TSPR 192. Además, cabe señalar que no es necesario que el notario haya faltado a la verdad intencionalmente para faltar a la fe pública y a los Cánones de Ética Profesional. Id.

La notaría es una función que requiere cuidado y que debe ser ejercida con sumo esmero y celo profesional y, en el despliegue de esta función el notario está obligado a cumplir estrictamente con la Ley Notarial y los Cánones de Ética Profesional. De lo contrario, el notario se expone a las sanciones disciplinarias correspondientes. Véase In re Torres Olmeda, res. el 23 de abril de 1998, 98 TSPR 48.

En Puerto Rico, la práctica notarial está rigurosamente reglamentada. Los notarios son los funcionarios encargados de garantizar la autenticidad de las firmas hechas ante sí, mediante la fe pública notarial. Art. 2 de la Ley Notarial, Ley Núm. 75 del 2 de julio de 1987, según enmendada, 4 L.P.R.A. 2002. La fe pública notarial, como elemento objetivo que se concretiza a través de la persona del notario con la presencia del compareciente, es la espina dorsal de todo esquema de autenticidad documental. In re Vargas Hernández, 135 D.P.R. 603 (1994). La intervención del notario otorga una presunción de veracidad a los documentos en que interviene. P.A.C. v. E.L.A., res. el 25 de febrero de 2000, 2000 TSPR 29. La dación de fe está avalada por la confianza de que los hechos jurídicos y circunstancias que acredita el notario fueron percibidos por sus sentidos. In re Feliciano Ruiz, 117 D.P.R. 269 (1987). Certificar un hecho falso, por lo tanto, es una de las faltas más graves que puede cometer un notario. In re Vargas Hernández, 135 D.P.R. 603 (1994).

La Ley Notarial reglamenta los testimonios o declaraciones de autenticidad bajo la fe pública en sus Artículos 56 a 60. Allí, dispone que un notario no asume responsabilidad alguna por el contenido del documento privado cuyas firmas legitime. Art. 56 de la Ley Notarial, 4 L.P.R.A. sec. 2091. Así también, el Reglamento Notarial en su Regla 67, 4 L.P.R.A. Ap.XXIV, dispone que el testimonio de legitimación de firma sólo acredita el hecho de que, en determinada fecha, una firma ha sido puesta en presencia del notario y por quien evidentemente es quien dice ser.

No obstante, se ha señalado que la regla de carácter general, en la cual un notario no asume responsabilidad del contenido de un affidávit, no es una sombrilla protectora de la negligencia o la dejadez en el ejercicio profesional. Pedro Malavet Vega, Derecho Notarial y Minutas Registrales en Puerto Rico (1997). Debemos tomar en cuenta el compromiso del notario con la verdad y la prudencia. Conociendo la falsedad de una expresión documental, o teniendo serias dudas, el notario no puede prestarse a cubrir el documento con el manto serio de la fe notarial. Lo prudente debe ser la abstención, acompañada del consejo profesional. *Id*. Igual postura se asume en los comentarios de la Regla 67 del Reglamento Notarial donde se expresa:

> [E]s de rigor recordar aquí que la ley no le impone responsabilidad alguna sobre el contenido de lo que declara el firmante en los testimonios, mas no así en las escrituras, cuyo contenido es de estricta responsabilidad del notario por tratarse de un instrumento público. **No obstante, si el notario**

**conoce que lo declarado por el firmante es una falsedad, debe abstenerse de autenticar su firma por su deber ético hacia la verdad.** (Énfasis suplido).

Por su parte, la Lic. Sarah Torres Peralta opina de igual modo:

> [E]l Notario no asume responsabilidad alguna por el contenido del documento privado cuyas firmas legitima. No obstante es indispensable enfatizar que cuando su función notarial se limita a suscribir y legitimar las firmas de los comparecientes, ello conlleva su deber ineludible en términos de responsabilidad profesional y de dimensiones éticas, de examinar detenidamente el documento. Si percibe que el mismo está redactado, en su contenido, en contravención a la Ley, la moral, el orden público o las buenas costumbres, es su deber el negarse a legitimar las firmas de los interesados. No puede ser de otra manera. Sarah Torres Peralta, El Derecho Notarial Puertorriqueño sec. 15.30 (1995).

Es preciso señalar que el Canon 35 exige primeramente que la conducta de todo miembro de la profesión ante los tribunales debe ser sincera y honrada. Todo el entramado de nuestro sistema judicial se erige sobre la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales. In re Currás Ortiz, 141 D.P.R. 399 (1996). La mentira degrada el carácter y envilece el espíritu y es antítesis de la conducta recta y honorable que el Código de Ética Profesional exige de todo abogado. Id. El compromiso de un abogado con la verdad debe ser siempre incondicional. In re Guzmán Esquilín, res. el 23 de octubre de 1998, 98 TSPR 142. Los abogados no deben convertirse en meros instrumentos de sus clientes. En ese sentido, el abogado que en nombre de una falsa

lealtad al cliente lo apoya y ayuda en una empresa deshonesta, traiciona la encomienda de sinceridad y honradez del Canon 35 de Ética Profesional, supra. In re Del Ríos Rivera y Otero Fernández, 118 D.P.R. 339 (1987).

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

### III.

De entrada es preciso indicar que la norma establecida es que un notario no da fe del contenido de un affidávit. Solamente es responsable de la fecha y que la firma haya sido puesta en su presencia y por quien evidentemente sea quien dice ser. Ahora bien, cuando a un notario le consta que el contenido del documento es falso debe abstenerse de autorizarlo, pues dicha conducta es violatoria del deber de sinceridad contenido en el Canon 35 que claramente exige que el abogado debe ajustarse a la sinceridad de los hechos al redactar un affidávit. Un abogado que en nombre de una falsa lealtad al cliente lo apoya y ayuda en una empresa deshonesta, traiciona la encomienda de sinceridad y honradez del Canon 35 de Ética Profesional, supra.

Del Informe del Comisionado Especial y de la prueba documental estipulada por las partes se desprende que el 5 de septiembre de 1997 la representación legal de la hija le comunicó telefónicamente al querellado que el 40% del negocio le pertenecía a sus clientes. Luego procedió el mismo día a enviarle copia de la referida sentencia. En ningún momento el querellado ha negado haber desconocido el contenido de la misma.

Aproximadamente tres (3) meses después, el querellado suscribió un affidávit en el cual sus clientes, la madre y su esposo, aparecen como dueños en pleno dominio de los bienes muebles del negocio vendiéndolos a un tercero. Tal documento excluía a la hija y su esposo de dicha transacción en perjuicio de su 40% de participación, según dispuso la sentencia que bien conocía el querellado. La hija y su esposo nunca recibieron suma alguna por concepto de esa transacción. Además, el querellado posteriormente acudió al Tribunal de Primera Instancia, en representación de la madre, para solicitar la posposición de la ejecución de sentencia que le otorgaba a la hija el 40% de esa propiedad, hasta que finalizare el caso de desahucio. Para la fecha de dicha comparecencia, el querellado sabía que ya se habían vendido los únicos bienes del negocio y también sabía que el caso de desahucio había finalizado previo una estipulación de las partes que él mismo gestionó.

Como mencionamos anteriormente, de conocer la falsedad de una expresión documental, o teniendo serias dudas, el notario no puede prestarse a cubrir el documento con el manto serio de la fe notarial. Lo prudente debe ser la abstención, acompañada del consejo profesional. En el presente caso, el querellado conocía la sentencia donde claramente determinaba que la hija de su cliente era dueña en 40% del negocio en controversia. En vista de ello, no podía sin más autorizar un affidávit cuyo contenido le constaba era falso. Es decir, legitimó unas firmas cuyo contenido afirmaba que la madre y su esposo eran los únicos

dueños en pleno dominio de los bienes muebles. No se trata de un abogado que meramente tiene dudas sobre lo que le afirma un compareciente. Se trata de un abogado que asumió la representación legal de dicho compareciente en dos casos, que conocía la referida sentencia y que sabía que las partes estaban envueltas en una agria pugna familiar sobre el mismo negocio del cual se proponían disponer sus bienes sin la aquiescencia de la hija.

El querellado arguye que "previo a que se suscribiera el contrato objeto de la queja [le] inquirió a la Sra. Rose Blanco Torres sobre la transacción que se estaba realizando. Ella le informó que la propiedad objeto de la transacción le pertenecía pues tenía un acuerdo con su hija en virtud del cual la vendedora había retenido los muebles del negocio Paraíso del Mar y su hija retendría el resto del negocio". El querellado alega que en virtud de la contestación de su cliente, y toda vez que un notario no asume responsabilidad sobre el contenido de un affidávit, no procede una acción disciplinaria en su contra.

Ciertamente es la norma general que un notario no asuma responsabilidad por el contenido del documento privado cuyas firmas legitima. Ahora bien, cuando le consta la falsedad de lo aseverado o tiene serias dudas al respecto, debe abstenerse de autorizar el documento. Ante la presente situación un notario debe levantar sospecha o al menos notar serias dudas, tal como sucedió en el caso de marras donde el querellado tuvo que inquirirle a su clienta al respecto. Según sostiene el

querellado, ante tal indagación la clienta contestó que luego de la sentencia había acordado con su hija que retendría para sí los enseres y utilería del negocio. Valga aclarar que pueden existir casos en que una aclaración de este tipo podría servir para despejar la duda que pueda tener un notario. Sin embargo, no puede perderse de perspectiva que el caso de autos trata de un abogado que ha intervenido directamente en un pleito a quien le constaba la intensa controversia entre la madre y la hija y sus respectivos cónyuges. Ante tales circunstancias, el querellado no debió haber creído sin más dicha contestación para luego optar por autorizar el documento. Al aceptar como cierta esta aseveración por parte de su cliente y decidir autorizar el documento, el querellado denota como mínimo una negligencia inexcusable.

El querellado ha desplegado en su conducta una falsa lealtad al cliente al apoyar y ayudar en una empresa deshonesta como la presente. Primero, autorizó un affidávit en abierta contradicción a la sentencia que conocía. Segundo, en aras de evitar que una ejecución de sentencia recayera sobre sus clientes, solicitó al tribunal de instancia que esperara hasta tanto terminasen los procedimientos en un caso de desahucio que él sabía que había concluido. En su escrito ante el tribunal faltó a la verdad con el propósito de evitar que la otra parte se enterara de la venta de los bienes del restaurante y reclamaran oportunamente su parte proporcional.

Su conducta claramente incumplió con el deber de sinceridad y honradez contenido en el Canon 35, *supra*. Si bien es cierto que sirve de atenuante el que sea la primera vez que el querellado incurre en una falta ética, no es menos cierto que la conducta que desplegó el querellado es grave y socava la integridad de la profesión legal. No obstante, como esto es la primera falta incurrida por el abogado en su historial de veintitrés (23) años en el ejercicio de la profesión, se limitan nuestras sanciones a una suspensión de seis (6) meses del ejercicio de la abogacía y la práctica de la notaría.

En vista de ello, el querellado notificará a sus clientes que por motivo de la suspensión no puede continuar con su representación legal y devolverá a éstos los expedientes de los casos pendientes y los honorarios recibidos por trabajos no realizados. Asimismo, informará de su suspensión a cualquier Sala del Tribunal General de Justicia o a cualquier foro administrativo donde tenga algún caso pendiente. Por último tiene la obligación de acreditar y certificar ante este Tribunal que cumplió con lo antes señalado.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Félix J. Montañez Miranda

CP-2001-8

SENTENCIA

San Juan, Puerto Rico, a 18 de junio de 2002.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se decreta la suspensión por seis meses de Félix J. Montañez Miranda del ejercicio de la abogacía y la notaría. Le imponemos el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Deberá además, certificarnos dentro del término de treinta (30) días, contados a partir de la notificación de esta Per Curiam y Sentencia, el cumplimiento de estos deberes.

El Alguacil del Tribunal Supremo procederá a incautarse de su obra y sello notarial, debiendo entregar los mismos a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Fuster Berlingeri no intervino. Los Jueces Asociados señores Corrada del Río y Rivera Pérez inhibidos.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo